**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Firouz YAMIN and Behroz Geramian,**
**Defendants–Appellants.**

No. 88–3481
**Summary Calendar.**

United States Court of Appeals,
Fifth Circuit.

March 7, 1989.
Rehearing Denied April 5, 1989.

Roma A. Kent, Federal Public Defender, New Orleans, La., for Yamin.

Michael A. Unger, Chicago, Ill., for Geramian.

Peter G. Strasser, Robert J. Boitmann, Asst. U.S. Attys., John P. Volz, U.S. Atty., New Orleans, La., for U.S.

Before RUBIN, GARWOOD, and DAVIS, Circuit Judges.

ALVIN B. RUBIN, Circuit Judge:

Two defendants convicted on various counts related to trafficking in counterfeit watches appeal their convictions. One defendant contends that the court's jury instruction so misstated the law that it was plainly in error, and the other contends that (1) the evidence was insufficient to support his conviction on two counts and (2) the government was required to produce the actual watches sold as the best evidence that the defendants had trafficked in counterfeit goods. Finding these arguments to be without merit, we affirm.

Special Agents of the U.S. Customs Service executed a search warrant on the premises of Geramian Collection II, a jewelry store owned and operated by Massoud Geramian and Firouz Yamin. They seized 324 replica Rolex, Piaget, Cartier, and Gucci watches from the closet and desks in the back office of the store. They also seized invoices indicating that during the past seventeen months the store had sold more than six thousand counterfeit watches. These invoices included sales made when the store was known as M & B Imports and was co-owned by Massoud Geramian and his brother, Behroz Geramian. Massoud and Yamin incorporated the business under the name Geramian Collection II, Inc. when Behroz sold his interest to Massoud. Both Massoud Geramian and Yamin were indicted on charges of trafficking in counterfeit watches. Both were found guilty and are now appealing their convictions. We consider separately each of the three issues raised.

## I.

Geramian argues that the court gave an improper jury instruction by misstating the standard for conviction under 18 U.S.C. § 2320. That statute provides criminal penalties for anyone who "intentionally traffics or attempts to traffic in goods or services and knowingly uses a counterfeit mark on or in connection with such goods or services."[1] The statute defines counterfeit mark as a spurious mark "the use of which is likely to cause confusion, to cause mistake, or to deceive."[2]

In explaining the definition of a counterfeit mark, the judge instructed the jury:

The prosecution is not required to prove that the defendant ever had an intent to deceive or defraud anyone. The Government simply has to show that the use of the spurious trademark is likely in the future to cause either confusion, mistake, or deception of the public in general.

... The public in general includes persons who have no intent to purchase such as the recipient of a gift or the guest in the house who simply views goods as well as purchasers and potential purchasers.

The intent here is an intent by the defendant to copy the trademark even if there is concededly no intention to deceive the purchaser.

Geramian argues that this instruction permitted the jury to find the confusion element satisfied by the mere viewing of a counterfeit watch by a disinterested member of the public who has no intention of purchasing. He contends that such a construction is an erroneous interpretation of the statute.

██ Because no objection was made to the instruction, the plain-error standard governs analysis of this issue.[3] To constitute plain error, the error must have been so fundamental as to have resulted in a miscarriage of justice.[4]

██ The judge's instruction made no such error. The statute's application is not restricted to instances in which direct purchasers are confused or deceived by the counterfeit goods. "Section 2320(a) is 'not just designed for the protection of consum-

---

1.  18 U.S.C. § 2320(a) (1984).

2.  *Id.* at (d)(1)(A)(iii).

3.  *United States v. Hernandez–Palacios,* 838 F.2d 1346, 1350 (5th Cir.1988).

4.  *Id.* at 1350–51.

ers. [It is] likewise fashioned for the protection of trademarks themselves and for the prevention of the cheapening and dilution of the genuine product.' " [5]

As the Eleventh Circuit stated in *United States v. Torkington,* [6]

> It is essential to the Act's ability to serve this goal that the likely to confuse standard be interpreted to include post-sale confusion. A trademark holder's ability to use its mark to symbolize its reputation is harmed when potential purchasers of its goods see unauthentic goods and identify these goods with the trademark holder. This harm to trademark holders is no less serious when potential purchasers encounter these goods in a post-sale context. Moreover, verbal disclaimers by sellers of counterfeit goods do not prevent this harm.

Geramian argues that because all of the witnesses who had purchased watches from the defendants testified that they were never deceived into thinking that they were purchasing authentic goods and in turn deceived no subsequent purchasers, there was no evidence to support a finding by the jury of post-sale confusion. Geramian contends that the judge's instruction permitted the jurors to find confusion on the part of some hypothetical disinterested members of the public, a finding that would run counter to the evidence.

█ Geramian interprets "post-sale confusion" too narrowly. The jury need not find actual confusion. The statute expressly requires only likelihood of confusion. The jury heard testimony from experts that members of the public constantly bring counterfeits in for repair only to find out that they are not genuine. Those who purchased watches from the defend-

ants testified to the similarity between the originals and the counterfeits they bought. The evidence was, therefore, sufficient to permit the jury to find that the watches sold had the potential to deceive or to cause confusion or mistake.

## II.

█ Yamin argues that the evidence was insufficient to support the jury's guilty verdict on Counts 1 and 12 of the superseding indictment. In evaluating the sufficiency of the evidence on appeal, the reviewing court must consider the evidence in the light most favorable to the government, with all reasonable inferences and credibility choices made in support of the jury's verdict.[7] The evidence is sufficient if a rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.[8]

█ Count 1 of the indictment charges Yamin with conspiracy to traffic in counterfeit goods in violation of 18 U.S.C. §§ 371 & 2320. The essential elements of the offense of conspiracy under § 371 are an agreement between two or more persons to commit a crime against the United States and an overt act by one of them in furtherance of the agreement.[9] The government must prove beyond a reasonable doubt that the defendant knew of the conspiracy and that he voluntarily became a part of it. The existence of a conspiracy may be proved by circumstantial evidence and may be inferred from concert of action.

█ Yamin argues that the evidence showed no more than his mere association with co-defendants Massoud and Behroz Geramian. Yamin and Massoud Geramian,

---

**5.** *United States v. Gantos,* 817 F.2d 41, 43 (8th Cir.1987), *cert. denied,* —— U.S. ——, 108 S.Ct. 175, 98 L.Ed.2d 128 (1987) (quoting *United States v. Gonzalez,* 630 F.Supp. 894, 896 (S.D. Fla.1986)).

**6.** 812 F.2d 1347, 1353 (11th Cir.1987). *See also United States v. Infurnari,* 647 F.Supp. 57, 59–60 (W.D.N.Y.1986).

**7.** *Glasser v. United States,* 315 U.S. 60, 80, 62 S.Ct. 457, 469, 86 L.Ed. 680 (1942); *United*

*States v. Nixon,* 816 F.2d 1022, 1029 (5th Cir. 1987), *cert. denied,* —— U.S. ——, 108 S.Ct. 749, 98 L.Ed.2d 762 (1988).

**8.** *Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979); *United States v. Bell,* 678 F.2d 547, 549 (5th Cir.1982) (en banc), *aff'd,* 462 U.S. 356, 103 S.Ct. 2398, 76 L.Ed.2d 638 (1983).

**9.** *United States v. Graves,* 669 F.2d 964, 969 (5th Cir.1982).

however, were joint owners of a corporation that sold thousands of counterfeit watches. While Massoud personally made most of the sales, the government presented ample evidence of Yamin's knowing participation in a conspiracy to make the sales.

Patti Fischer testified that over a period of several years she purchased counterfeit watches for the total sum of $31,122.87 and that on three separate occasions she purchased watches from Geramian at Yamin's apartment. A number of witnesses testified either that they bought counterfeit Rolex and Gucci watches directly from Yamin, or that Yamin produced watches for a prospective purchaser to examine, or that Yamin was present when Geramian was negotiating the sale of counterfeit watches under circumstances from which Yamin's knowledge of the proceedings can be inferred.

This evidence, which we need not recount in detail, was sufficient for the jury to find beyond a reasonable doubt that Yamin was an active and knowing participant in the conspiracy to traffic in counterfeit goods.

■ Yamin also contends that the evidence was insufficient to support his conviction on Count 12 of the indictment which charged him with knowingly and intentionally trafficking in counterfeit goods in violation of 18 U.S.C. §§ 2 & 2320. This count refers to the sale of a counterfeit Rolex watch to an undercover agent. Yamin argues that because he did not actually take the money or write up the invoice, the sale was not made by him.

Even if the sale had not been actively negotiated and closed by Yamin, Yamin could be found guilty as a principal for aiding and abetting Geramian in that sale.[10] To convict a defendant as an aider and abetter, the government must show that the defendant committed an act that contributed to the execution of the criminal activity and that he intended to aid in its commission.[11] The undercover agent testi-

fied that Yamin was present in the back room of the store when she bought a counterfeit Rolex and that Yamin brought her the watch that she purchased. He also called her bank to see if her check was good. From this testimony the jury could conclude beyond a reasonable doubt that Yamin had at least aided and abetted in the sale of a counterfeit watch.

### III.

Count 9 charged Yamin and Geramian with violation of 18 U.S.C. §§ 2 and 2320 by the sale of watches to a particular customer (Patti Fischer), and Count 11 alleged violation of the same statutes by the sale of watches to another named customer. Yamin claims that the government failed to introduce the best evidence of the counterfeit marks, namely the watches themselves. He contends that Federal Rule of Evidence 1002, the best evidence rule, bars the admission of testimony about the marks absent proof of one of the unavailability exceptions.

■ This novel argument appears plausible because it is, at least in part, the writing on the watch that makes it a counterfeit. Thus it may be argued that it is the content of that writing that must be proved. The purpose of the best evidence rule, however, is to prevent inaccuracy and fraud when attempting to prove the contents of a writing.[12] Neither of those purposes was violated here. The viewing of a simple and recognized trademark is not likely to be inaccurately remembered.[13] While the mark is in writing, it is more like a picture or a symbol than a written document. In addition, an object bearing a mark is both a chattel *and* a writing, and the trial judge has discretion to treat it as a chattel, to which the best evidence rule does not apply.[14]

---

10. 18 U.S.C. § 2.

11. *United States v. Stovall,* 825 F.2d 817, 827 (5th Cir.1987).

12. Fed.R.Evid. 1001 (advisory committee notes).

13. *See United States v. Duffy,* 454 F.2d 809 (5th Cir.1972).

14. *Id.* at 812.

Several witnesses, including the two identified in Counts 9 and 11, testified that they bought watches with the counterfeit trademarks. Furthermore, 324 counterfeit watches, seized from the defendants' store, were admitted into evidence. These watches were discovered in the back office where every witness testified to having seen counterfeit watches. The seized watches were identified by experts as imitations of various models made by Piaget, Rolex, Cartier, and Gucci. The jury compared the seized watches with originals or pictures of the originals. In addition, the actual watch sold to the undercover agent was introduced into evidence. The inference that the seized watches that were entered into evidence were the same as, or substantially identical to, the watches sold to the various witnesses is too strong to be seriously questioned. And, in any event, Yamin did not properly preserve his "best evidence" contention. Rule 1002, Federal Rules of Evidence, is a rule governing the admissibility of evidence. However, relevant evidence admitted without objection may properly support a verdict, so far as it has probative value, even though its exclusion would have been required on appropriate objection.[15] Here, Yamin did not object on the basis of the "best evidence" rule to the admission of any testimony or evidence proffered by the prosecution, but only raised the "best evidence" contention in argument in support of a motion for judgment of acquittal at the close of the prosecution's case. Absent "plain error"—which is not shown here—this does not suffice to preserve the contention that the evidence in question should not have been admitted. *See* Fed.R.Evid. 103(a)(1).

For the foregoing reasons, the judgment is AFFIRMED.

15. *See, e.g.,* McCormick On Evidence § 54 (3rd ed.).