**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Joseph W. PATTAN,
Defendant–Appellant.**

**No. 89–3451.**

United States Court of Appeals,
Fifth Circuit.

May 10, 1991.

Diana E. Courselle, David W. Gruning, Loyola Law School, New Orleans, La., for defendant-appellant.

Joseph W. Pattan, pro se.

Richard B. Launey, Asst. U.S. Atty., P. Raymond Lamonica, U.S. Atty., Baton Rouge, La., for plaintiff-appellee.

Before WISDOM, JOLLY, and DAVIS, Circuit Judges.

WISDOM, Circuit Judge.

A jury convicted Joseph W. Pattan III of two counts of violating the Hobbs Act and of four counts of committing perjury in his testimony to a federal grand jury. Pattan appeals his conviction, raising several issues. We affirm on all issues, except the imposition of the costs of incarceration under sentencing guideline section 5E1.2(i). We vacate the judgment as to that issue and remand the case to the trial judge for reconsideration of that issue only.

I

*Factual Background*

On October 19, 1988, the Grand Jury for the Middle District of Louisiana charged Pattan with one count each of extortion and attempted extortion under color of official right, in violation of the Hobbs Act, 18 U.S.C. § 1951,[1] and with four counts of

---

**1.** In relevant part, the Hobbs Act provides:

(a) Whoever in any way or degree obstructs, delays, or affects interstate commerce or the movement of any article or commodity in com- merce by robbery or extortion or attempts or conspires to do so ... shall be fined not more than $10,000 or imprisoned not more than twenty years, or both.

having made false statements to the Grand Jury, in violation of 18 U.S.C. § 1623.

After two initial appearances, on December 6, 1988 and December 12, 1988, at which Pattan was not represented by counsel, Pattan notified the court that he was having difficulty obtaining counsel because he did not have sufficient funds to make the initial payment required by the attorneys with whom he had talked. He requested that the trial court appoint counsel to represent him. A magistrate appointed Robert Collins to represent Pattan on December 14, 1988. Because the court found that Pattan did not qualify as indigent, the court ordered Pattan to pay the fees of his appointed counsel and the costs of his defense.

To cover the costs of investigation for his defense, the court ordered Pattan to deposit certain funds with the court. When Pattan failed to deposit money to cover these costs, the court, on February 24, 1989, vacated its order appointing Collins to represent Pattan. By March 2nd, Pattan had still failed to find counsel willing to accept his defense. The court held a hearing to resolve the representation issue and, with the consent of Pattan, reappointed Collins. The trial court also ordered a one week continuance—a continuance equal in duration to the seven days between February 24th and March 3rd during which Pattan was not represented by counsel.

The trial began on March 20, 1989. At trial, the government established that Pattan was an elected member of the West Baton Rouge Parish police jury, and that the police jury regulated and controlled the operation of bingo within the parish. The government introduced testimony that Stanley Laforet, the owner and operator of Westside Bingo, agreed to pay Pattan four hundred dollars a month, for which Pattan agreed to use his position as a police juror to protect and support Laforet's bingo op-erations. The government introduced testimony that several payments were made under the terms of the agreement, and that Pattan used his position to support Laforet's bingo operations.

The most telling evidence in the case came from a tape recording made by one John Marshall, a Laforet employee on January 24, 1987. The tape recorded a conversation between Marshall and Pattan at Pattan's home.[2] In the recorded conversation, Pattan expressed his disappointment that Laforet had failed to pay the four hundred dollars a month agreed to. When Marshall stated that he had decided to leave the employ of Laforet to open his own bingo halls, Pattan offered Marshall a similar agreement: in return for monthly payments, Pattan would use his position as a police juror to support and protect Marshall's bingo operations.

The tape is replete with assurances by Pattan: "I'll be the one. You can depend on the police jury. And that's what I'll do, I'll do because I'll be dealing with you." When Marshall expressed concern about potential difficulties with the police jury, Pattan assures him that "I am going to be right there with you, you know, when the going gets tough I am going to be there. See what I am saying. You know that. Oh, I am going to be there. You don't have to be worry about that."

Pattan took the stand in his own defense. He acknowledged that he had received payments from Laforet, but testified that some of the payments were gifts, while others were made to repay a loan he had made to Laforet. When confronted with his statements on the tape, Pattan testified that he was merely playing along with Marshall, perhaps with the notion of turning Marshall in for attempted bribery.

The evidence also demonstrated that when asked by the Grand Jury whether he

---

(b) As used in this section—

    .    .    .    .    .

  (2) The term "extortion" means the obtaining of property from another, with his consent, induced by wrongful use of actual or threatened force, violence, or fear, or under color of official right.

18 U.S.C.A. § 1951 (West 1984).

**2.** The defendant stipulated that the tape was an accurate recording of a conversation he had with Marshall.

had received any payments from Laforet, or whether he had discussed the possibility of receiving cash payments in return for his support of specific bingo operations, Pattan stated that he could not recall ever accepting any payments from Laforet, or otherwise discussing an agreement to accept payments from bingo operators in return for his support of their operations.

The jury convicted Pattan of all six counts. The trial judge ordered a presentence report prepared with regard to the perjury counts. The presentence report recommended that (1) two levels be added to the base offense level for obstruction of justice, under section 3C1.1 of the sentencing guidelines; (2) three levels be added for the specific offense characteristic of substantial interference with the administration of justice, under section 2J1.3(b)(2); and (3) two levels be added for abusing his position as a police juror to facilitate his perjury, under section 3B1.3. The presentence report recommended that neither a fine, nor the costs of incarceration, be imposed under section 5E1.2, because the imposition of such a financial burden would cause his family undue hardship.

Without objection, the trial judge adopted the recommendations of the presentence report concerning the adjustments to the base sentence level. The trial judge rejected the report's recommendation as to the imposition of the costs of incarceration; instead, he ordered Pattan to pay $1,220 per month to cover the costs of his incarceration.

Pattan appeals arguing that: (1) the Hobbs Act portion of the jury charge constituted plain error; (2) the trial judge improperly interfered with Pattan's Sixth Amendment right to counsel; and (3) the trial judge committed plain error in sentencing Pattan.

## II

### Hobbs Act Instructions

■ Pattan argues, in his first point, that the instructions given by the district court permitted the jury to convict Pattan for passive acceptance of a bribe. Pattan urges us to adopt the reasoning of the Ninth Circuit in *United States v. Aguon*,[3] and to hold that a public official cannot be convicted for passive acceptance of a bribe under the Hobbs Act. Pattan urges us to hold that the government must establish that the public official took some action that "induced" the payment.

In its charge, the trial court instructed the jury that the government must establish three elements beyond a reasonable doubt in order to convict Pattan under the Hobbs Act:

> *First:* That the defendant induced the person described in the indictment to part with money or property;

> *Second:* That the defendant did so knowingly and willfully by means of "extortion," as I will define it; and

> *Third:* That the extortionate transaction delayed, interrupted or adversely affected interstate commerce.

The trial court went on to define more specifically the terms "extortion" and "under color of official right".

> "Extortion" means the obtaining of property from another, with his consent, induced under color of official right. The mere receiving of a gift does not constitute extortion.

> · · · · ·

> Extortion "under color of official right" is the wrongful taking by a public officer of money or property not due to him or his office, whether or not the taking was accomplished by force, threats, or use of fear. In other words, the wrongful use of otherwise valid official power may convert dutiful action into extortion.

It is the nature of the office itself which provides the necessary inducement taking the place of fear, duress, or threat when a defendant knowingly takes ad-

---

**3.** 851 F.2d 1158 (9th Cir.1988) (en banc) (6–5 decision); *see also United States v. O'Grady*, 742    F.2d 682, 687–91 (2d Cir.1984) (en banc).

vantage of his office in relation to the payor.

While Pattan originally objected to the jury charge on this issue, arguing for two alternate wordings,[4] he withdrew his objection when the trial judge added to the instruction the phrase "[t]he mere receiving of a gift does not constitute extortion." Because Pattan did not object to the charge as given, we review the charge for plain error.[5] In the Fifth Circuit, we reverse a conviction, under the plain error standard, "only if the error is so obvious that our failure to notice it would seriously affect the fairness, integrity, or public reputation of judicial proceedings and result in a miscarriage of justice."[6]

To support their position that only extortion, and not bribery, falls within the ambit of the Hobbs Act, the Ninth Circuit, and commentators point to the plain language of the Act and to its legislative history.[7] Those supporting this interpretation of the Hobbs Act argue that there must be some showing that the public officer, in some way, communicated a demand or request for the consensual transfer of property before the officer can be convicted.

Whatever the merits of incorporating the proposed distinction between extortion and passive acceptance of a bribe into the Hobbs Act,[8] we see no need to do so given the facts and the standard of review in this case. First, there is no contention in this case that these payments were legitimate campaign contributions, or that Pattan understood them to be campaign contributions. Second, the jury instructions provided that "the mere receiving of a gift" does not constitute extortion. Under this instruction, if the jury had accepted Pattan's explanation, that the payments were either gifts or loan repayments, the jury would have returned a verdict of not guilty. Their failure to return such a verdict indicates their rejection of Pattan's explanation for the payments. Given the jury's decision to credit Marshall's testimony, rather than Pattan's, Pattan's actions cannot be characterized as mere passive acceptance of a bribe. Pattan's own statements on the tape show that he actively sought these payments. Thus, even to the extent that the instructions did not adequately convey the supposed distinction between bribery and extortion, we hold that any error in the charge did not result in a miscarriage of justice.

■■■ Furthermore, we find that the jury instructions adequately conveyed the requisite element of extortion by requiring a showing that the public officer "knowingly [took] advantage of his office in relation to the payor" in order to obtain the consen-

---

4. In his Supplemental and Amending Requested Jury Instructions, Pattan proposed two alternate definitions for extortion under color of official right. His first proposal read as follows:

> Extortion "under color of official right" does require that a victim was induced to give Mr. Pattan money. In order to find Mr. Pattan guilty of extortion in this case, you would have to find that Mr. Pattan did something, under color of his office, to cause the giving of benefits. It is not enough that Mr. Pattan received a bribe. The government must prove that Mr. Pattan sought this money.

If, and only if, the trial judge refused to give this requested instruction, then Pattan provided the following alternate instruction:

> It is extortion if the official knows that the bribe, gift, or other favor is motivated by a hope that it will influence him in the exercise of his office and, if knowing that, he accepts the bribe.

5. *See, e.g., United States v. Park,* 421 U.S. 658, 95 S.Ct. 1903, 44 L.Ed.2d 489 (1975); *United States v. Welch,* 810 F.2d 485, 487 (5th Cir.1987).

6. *United States v. Graves,* 669 F.2d 964, 971 (5th Cir.1982); *see also United States v. Yamin,* 868 F.2d 130, 132 (5th Cir.), *cert. denied,* 492 U.S. 924, 109 S.Ct. 3258, 106 L.Ed.2d 603 (1989).

7. *See, e.g., Aguon,* 851 F.2d at 1162–66; Note, *Misapplication of the Hobbs Act to Bribery,* 85 Colum.L.Rev. 1340, 1346–51 (1985); Note, *Prosecuting Public Officials Under the Hobbs Act: Inducement as an Element of Extortion Under Color of Official Right,* 52 U.Chi.L.Rev. 1066, 1078–84 (1985).

8. Several circuits have considered and rejected the need to draw this distinction in a Hobbs Act prosecution. *See, e.g., United States v. Evans,* 910 F.2d 790, 796–97 (11th Cir.1990); *United States v. Garner,* 837 F.2d 1404, 1421–22 (7th Cir.1987), *cert. denied,* 486 U.S. 1035, 108 S.Ct. 2022, 100 L.Ed.2d 608 (1988); *United States v. Spitler,* 800 F.2d 1267, 1274–75 (4th Cir.1986); *United States v. Jannotti,* 673 F.2d 578, 595 (3d Cir.) (en banc), *cert. denied,* 457 U.S. 1106, 102 S.Ct. 2906, 73 L.Ed.2d 1315 (1982).

sual transfer of property. When a public officer participates in negotiations and promises to use (or not to use) the power of his office in return for cash payments, it is reasonable to conclude that his willingness to negotiate and to promise his assistance were decisive factors inducing the resulting cash payments. Without this promise to misuse his political office, the payment never would have been made.[9] Thus, we have consistently held that the wrongful use of one's political office to obtain a transfer of property falls within the scope of extortion under color of official right.[10] We reaffirm this position and hold that the instructions given in this case properly focused the jury's attention on those actions of the public officer that caused Laforet and Marshall to make payments to Pattan.

We affirm Pattan's conviction under the Hobbs Act.

## III

### Interference with Right to Counsel

■ Pattan argues, in his second point, that the appointment order, entered by the district court, interfered with his ability to retain the counsel of his choice. In response to Pattan's position, the government argues that it was Pattan's failure to pay the costs of his own defense that caused any difficulty he may have had in obtaining counsel.

First, counsel was initially appointed at Pattan's request because Pattan did not have sufficient funds to provide the down payment necessary to retain counsel. Second, because Pattan was not indigent, Pattan was responsible for paying his own costs of defense. Third, there is no showing that the district court would not have rescinded the order if, at any time, Pattan had asked the district court to do so.

In resolving this issue, we note that Pattan raised this argument in a post-trial motion filed with the district court. Before the district court could consider its merits, however, Pattan filed a second motion striking his allegations.[11] Although the district court did not give the original motion its full consideration, the motion was discussed briefly at the sentencing hearing:

The Court: You did file a motion for a new trial but then you disregarded all

---

**9.** We have trouble accepting some of the reasoning of the Ninth Circuit. For example, the Ninth Circuit justifies its rule by stating that "[p]ublic officials who tell members of the public that favors are for sale commit a more serious offense than those who accept unsolicited payments." *Aguon,* 851 F.2d at 1167. In our view, by accepting an unsolicited payment, the public official has conveyed to certain members of the public the message that favors are for sale. Given that such payments are illegal for both sides, the process of arranging a payment will often involve a subtle, and largely unspoken, negotiation period, during which each side ensures the intentions of the other. If a payment actually results, it is only because the public official consistently acted to assure the other side of his intentions. Outside the limited area of payments that appear to be campaign contributions, *see, e.g., United States v. Dozier,* 672 F.2d 531, 537–38 (5th Cir.), *cert. denied,* 459 U.S. 943, 103 S.Ct. 256, 74 L.Ed.2d 200 (1982), we find that the instructions given appropriately captured the importance of the public official's actions in causing a payment to be made.

**10.** *See, e.g., United States v. Wright,* 797 F.2d 245, 250 (5th Cir.1986), *cert. denied,* 481 U.S. 1013, 107 S.Ct. 1887, 95 L.Ed.2d 495 (1987); *United States v. Williams,* 621 F.2d 123, 124 (5th Cir.1980), *cert. denied,* 450 U.S. 919, 101 S.Ct.

1366, 67 L.Ed.2d 346 (1981). We note that the Second Circuit has adopted a similar rule. "'Extortion "under color of official right" is committed when a public official *makes wrongful use of his office to obtain money* not due him or his office.' The conduct proscribed by the Hobbs Act is the wrongful use of public office, not merely the acceptance of benefits." *O'Grady,* 742 F.2d at 687 (quoting *United States v. Margiotta,* 688 F.2d 108, 130 (2d Cir.1982), *cert. denied,* 461 U.S. 913, 103 S.Ct. 1891, 77 L.Ed.2d 282 (1983)).

**11.** In his original motion, Pattan set forth six grounds for a new trial: (1) ineffective assistance of counsel; (2) violation of his right of confrontation because Laforet refused to testify; (3) introduction of hearsay; (4) denial of motion for mistrial based on prosecutor's reference to the crime of theft; (5) *the trial court interfered with his right to select counsel of his choice;* and (6) the trial court threatened Pattan with trial even if Pattan had not retained counsel, even though the court knew that Pattan wanted counsel. His first motion was filed on April 21, 1989. On April 28, 1989, Pattan sought to amend his original motion, and in the first paragraph of his motion to amend, Pattan stated: "Mover wishes to delete paragraph one through six."

those things, and you should have because none of those things set forth in the original motion were correct. I don't see how you could have possibly filed that.

Mr. Crawford[12]: Your Honor, when we filed the thing we were—we didn't have the information available to us at that time. and that is why we filed it based ..pon the information we had obtained.

The Court: Where did you get the information that I forced Mr. Collins to represent Mr. Pattan and Mr. Pattan was forced to have Mr. Collins as a lawyer? All of that is recorded and taken down by the Court Reporter....

Mr. Crawford: Unfortunately that information was obtained from my client at that time.

The Court: That was a lie.

Mr. Crawford: We recognize that the information contained in the motion for a new trial was in error, and that is why we attempted to delete the information and based upon the information we had obtained from the documents that we had received.

Because Pattan presented this argument to the district court, and then withdrew it with the admission that it was based on erroneous information, we are reluctant to consider this argument at all.

**12.** Mr. Collins represented Pattan during the trial, but Pattan retained Mr. Crawford to represent him as to the post-trial motions and sentencing.

**13.** On March 2, 1989, the trial court issued a minute entry detailing the representation difficulties:

Earlier in these proceedings, United States Magistrate Christine Noland appointed a lawyer to represent the defendant even though the defendant was not indigent under the Criminal Justice Act. The magistrate's order also required the defendant to pay the attorney's fees. Robert Collins was appointed to represent the defendant. The Court held a number of in camera conferences with the defendant and his attorney. The defendant was ordered to pay certain funds to be used by his attorney in the defense of his case. These funds were not paid and counsel could not obtain these funds under the Criminal

But even assuming that Pattan has not waived this argument, and assuming further that we should not accept as binding Pattan's acknowledgement, through counsel, that the argument is based on false information, we have little trouble affirming the actions of the district court. The records of the various *in camera* and *ex parte* hearings held by the trial judge on the issue of Pattan's representation conclusively demonstrate that counsel was appointed at Pattan's request and that it was Pattan's failure to provide the funds for his own defense that caused any difficulties concerning his representation.[13] Because the trial court found that Pattan was not indigent, a finding Pattan does not appeal, Pattan was legally responsible for providing his own counsel. His inability or failure to raise the necessary funds, obliged the court to appoint counsel. We hold that the order appointing counsel for Pattan, made at Pattan's request and in an effort to assist Pattan's efforts to retain counsel, is not an interference with Pattan's Sixth Amendment right to counsel.

## IV

### Sentencing Issues

As his third argument, Pattan attacks several aspects of the trial judge's sentencing decision on the perjury counts.[14] First, he argues that the district court improperly added seven levels to his base offense lev-

Justice Act. Therefore, the Court vacated the magistrate's order which had appointed counsel for the defendant. The Court advised the defendant that he could retain Mr. Collins or any other attorney of his choice. For reasons unknown to the Court, the defendant has advised the Court that Mr. Collins would not represent him in this case. The defendant further advised the Court that he would meet with other counsel on March 1 and 2.

The Court wishes to make the record clear that at no time has this Court prevented the defendant from retaining counsel. The only action this Court has taken is to enforce the Criminal Justice Act as enacted by the Congress. The defendant was not eligible to have counsel appointed and when counsel was appointed, failed to provide funds to his counsel for his defense.

**14.** The violations of the Hobbs Act were not sentenced under the guidelines.

el: three levels for substantial interference with the administration of justice, under section 2J1.3(b)(2); two levels for obstruction of justice, under section 3C1.1 of the sentencing guidelines; and two levels for abusing his position as a police juror to facilitate his perjury, under section 3B1.3. Second, he argues that the trial judge improperly ordered him to pay $1,220 per month to cover the costs of his incarceration, despite the recommendation of the presentence report that such costs not be imposed.

Pattan offered no objection to these actions of the district court at the sentencing hearing. His failure to raise these issues in the district court prevents Pattan from raising these issues on appeal, absent plain error.[15]

### A. The Addition of Seven Levels to the Base Offense Level.

■ With regard to each of the three adjustments to the base offense level for his perjury, Pattan argues that the findings of fact contained in the presentence report do not support the adjustment as a matter of law. Because the district court adopted the findings of fact in the presentence report without making any additional findings, Pattan contends that the seven levels added to his base level constitute plain error. The government agrees that the facts in the presentence report do not support the adjustments, but argues that under a plain error standard, the question is whether the facts in the record as a whole

support the adjustment. For each adjustment, the government points to evidence in the record that would have supported the adjustment. The government asserts that the trial judge would have made the necessary findings had Pattan brought the need to do so to the judge's attention by objecting to the presentence report.

For example, with regard to the two level adjustment for obstruction of justice, the presentence report states: "The defendant impeded or obstructed justice by testifying untruthfully before a federal grand jury investigating bingo in West Baton Rouge Parish." As the application notes state, the two points for obstruction of justice are added to the base level of a perjury conviction only if a defendant impedes the investigation or prosecution of the perjury count.[16] Thus, the statement in the presentence report that Pattan committed perjury to the grand jury cannot sustain the two level adjustment because it refers to the perjury that formed the basis for the conviction, not to further perjury that interfered with the investigation or prosecution of the perjury count. The government counters Pattan's argument by pointing to evidence in the record concerning Pattan's perjury at trial, his falsehoods to a Special Agent of the Federal Bureau of Investigation, and his disruption of the court proceeding during his testimony.[17]

The essential question, therefore, is whether, under the plain error standard, we should evaluate the adjustments based solely on the factual findings actually made

---

15. See United States v. Ebertowski, 896 F.2d 906, 907 (5th Cir.1990).

16. The application notes to § 2J1.3 (Perjury or Subornation of Perjury) provide:

For offenses covered under this section, Chapter Three, Part C (Obstruction) does not apply, unless the defendant obstructed the investigation or trial of the perjury count.
Sentencing Guidelines § 2J1.3, application note 2. The application notes to § 3C1.1 (Willfully Obstructing or Impeding Proceedings) provide:
Where the defendant is convicted for an offense covered by ... § 2J1.3 (Perjury) ..., this adjustment is not to be applied to the offense level for that offense except where a significant further obstruction occurred during the investigation or prosecution of the

obstruction offense (e.g. where the defendant threatened a witness during the course of the prosecution for the obstruction offense).
Sentencing Guidelines § 3C1.1, application note 4.

17. At one point while he was being cross-examined, Pattan, in front of the jury, told his counsel in a loud voice to move for a mistrial. Later in his testimony, after he was warned that such behavior was inappropriate, Pattan mouthed "mistrial" to his counsel. In discussing the incident, the trial judge stated: "On at least two occasions during the course of this trial Mr. Pattan should have been held in contempt of Court, flagrant disregard of Court proceedings almost to the point of being a game and a joke to Mr. Pattan as he sat here in open Court or on the witness stand."

by the trial judge or whether we should consider the entire record when we evaluate the adjustments. It is apparent that, if we consider evidence in the record as a whole, the adjustments are not a miscarriage of justice; the question is much more difficult if we restrict our analysis to the facts specified in the presentence report.

Under the plain error standard, we are looking for a mistake that is "so obvious that our failure to notice it would seriously affect the fairness, integrity, or public reputation of judicial proceedings and result in a miscarriage of justice." [18] Given the minimal nature of our review, we find it appropriate to consider all of the evidence in the record supporting the adjustments, and will uphold the adjustments if the record as a whole demonstrates that the adjustments did not result in a miscarriage of justice. [19]

■ With regard to the three level adjustment for substantial interference with the administration of justice, and the two level adjustment for obstruction of the perjury prosecution, we find that the evidence in the record of Pattan's further false statements to the trial jury, to the FBI investigator, and to his attorney after the trial, provide a sufficient basis for the application of these two adjustments. [20] These facts establish efforts by Pattan to impede his perjury prosecution, and support the adjustments. We also agree with the government that Pattan's position as a police juror, and his appearance in that role before the grand jury, provide a sufficient

basis to support the two level adjustment for abuse of a position of trust.

Our review of the record convinces us that the seven level adjustment to Pattan's base offense level was not a miscarriage of justice. We, therefore, affirm the seven level increase in the offense level.

### B. The Imposition of the Costs of Incarceration.

■ We have more trouble with the order requiring Pattan to pay $1,220 per month to cover the costs of his incarceration. The only reference on this point comes from the presentence report which recommended that such costs not be imposed. The presentence report specifically found that imposing either a fine or the costs of incarceration would unduly burden Pattan's family. The evidence in the report indicates that Pattan and his wife had a combined net worth of $16,270. [21] The only income available to the family, during Pattan's incarceration, is his wife's salary of $1,667 per month. [22] The report states that the necessary living expenses for the wife and their two children currently amount to $2,237. With reasonable cost-cutting, the report estimated that these expenses could be reduced somewhat, perhaps to $1,837 or so. But even with such cost-cutting, the presentence report stated that the family would be unable to meet its necessary living expenses, let alone the additional expense of a fine or the costs of Pattan's incarceration.

---

**18.** Graves, 669 F.2d at 971; see also United States v. Yamin, 868 F.2d at 132.

**19.** In considering whether a sentence imposed under the guidelines constitutes plain error, we have considered whether the entire record supports the imposition of the sentence. Cf. United States v. Brunson, 915 F.2d 942, 944 (5th Cir. 1990); Ebertowski, 896 F.2d at 907–08.

**20.** The trial judge discussed some of these incidents at the sentencing hearing, though he did not formally base his adjustment on these facts: "[Pattan] lied to the Grand Jury, for which he has been convicted of. The statements he made to the jury which tried him and found him guilty, the statements made were less than truthful, and then after the trial was over he lies to his lawyer. He misrepresents facts to his law-

yer to such an extent that Mr. Crawford, being an officer of the Court, has to come back into Court and withdraw a motion for a new trial based upon facts he obtained from Mr. Pattan, facts which were totally false, facts which were not supported by the evidence in this case, facts which were nothing short of being lies or misrepresentations to his own counsel and then later to the Court."

**21.** The presentence report actually refers only to Pattan's half of the community property. We have doubled the figure in an attempt to take every reasonable effort to uphold the decision of the trial court, as we should under the plain error standard.

**22.** It appears that this number refers to her "take-home" pay.

In considering this issue, the trial court agreed with the presentence report that a fine would not be appropriate "because of the nature of the [family's] financial condition", yet made Pattan responsible for the costs of his incarceration. The trial judge made no findings that supported this departure from the recommendations of the presentence report. He pointed to no evidence that differed from the facts contained in the presentence report, nor did he discuss any other evidence concerning Pattan's financial condition. (The testimony at trial established that Pattan extorted only a small amount of money, less than a thousand dollars.) The only evidence we can find, that in the presentence report, does not support the decision of the trial court even under the most optimistic cost-cutting assumptions. If the family were to sell all of their assets, or were to use their assets as collateral, they could cover the costs of incarceration for a little over a year, but Pattan has been sentenced to three years incarceration. After the first year, Pattan's wife and two children would be forced to try and live, for two years, on only $450 per month[23] in income.

Based on the evidence available, we find no support for the proposition that Pattan and his family would not be unduly burdened if required to cover the $1,220 per month costs of Pattan's incarceration. Because Pattan may be able to afford some portion of the costs of his incarceration,[24] and because the district court may have considered other factors not apparent on our review of the cold record, we vacate the imposition of the full costs of incarceration and remand for a redetermination of this issue.[25]

### V

We affirm the conviction of Pattan. We vacate and remand that portion of the sentence in which the trial court imposed the full costs of incarceration on Pattan, but, in all other respects, affirm the sentencing decisions of the trial court.

---

**23.** The $450 figure represents the approximate difference between the wife's salary of $1,676 and the costs of incarceration of $1,220.

**24.** Alternatively, the district court can require community service in lieu of imposing a fine or the costs of incarceration. Sentencing Guidelines § 5E1.2(f).

**25.** *Cf. Ebertowski,* 896 F.2d at 907–08.