**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

LIFENG WANG, AKA Alice Wang,
*Petitioner-Appellant*,

v.

LEON RODRIGUEZ, Director of U.S.
Citizenship and Immigration
Services; ROBIN BARRETT,
Director of the San Francisco Field
Office, U.S. Citizenship and
Immigration Services,
*Respondents-Appellees.*

No. 14-15779

D.C. No.
3:12-cv-06367-LB

OPINION

Appeal from the United States District Court
for the Northern District of California
Laurel D. Beeler, Magistrate Judge, Presiding

Argued and Submitted February 12, 2016
San Francisco, California

Filed July 27, 2016

Before: A. Wallace Tashima and William A. Fletcher,
Circuit Judges and Stanley Allen Bastian,[*] District Judge.

Opinion by Judge W. Fletcher

---

[*] The Honorable Stanley Allen Bastian, District Judge for the U.S. District Court for the Eastern District of Washington, sitting by designation.

## SUMMARY[**]

### Immigration

The panel reversed and remanded the district court's summary judgment for the government in Lifeng Wang's petition seeking de novo review of the United States Citizenship and Immigration Service's denial of naturalization based on Wang's conviction for trafficking in counterfeit goods in violation of 18 U.S.C. § 2320(a).

The panel held that a conviction under 18 U.S.C. § 2320 does not necessarily involve fraud or deceit because a defendant can be convicted of trafficking in counterfeit goods for conduct that is merely likely to cause "mistake" or "confusion." The panel held that therefore Wang's conviction could not form the basis for a finding that she was convicted of an aggravated felony under 8 U.S.C. § 1101(a)(43)(M)(i).

### COUNSEL

Frank M. Tse (argued), Law Office of Frank M. Tse, San Francisco, California, for Petitioner-Appellant.

Sarah L. Vuong (argued), Trial Attorney; Colin A. Kisor, Deputy Director; Civil Division, Office of Immigration Litigation, United States Department of Justice, Washington, D.C., for Respondents-Appellees.

---

[**] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

**OPINION**

W. FLETCHER, Circuit Judge:

Lifeng Wang, a lawful permanent resident, was convicted of one count of trafficking in counterfeit goods in violation of 18 U.S.C. § 2320(a). Based on that conviction, U.S. Citizenship and Immigration Services ("USCIS") denied her application for naturalization, concluding that Wang had been convicted of an offense "involv[ing] fraud or deceit" with a loss to the victim of over $10,000, an aggravated felony under 8 U.S.C. § 1101(a)(43)(M)(i). On de novo review, the district court agreed and concluded that Wang was therefore ineligible to become a naturalized citizen.

We hold that a conviction under 18 U.S.C. § 2320 does not necessarily involve fraud or deceit because a defendant can be convicted of trafficking in counterfeit goods for conduct that is merely likely to cause "mistake" or "confusion." Wang's conviction was therefore not an aggravated felony under 8 U.S.C. § 1101(a)(43)(M)(i). We reverse and remand to the district court for further proceedings.

## I. Background and Procedural History

Lifeng Wang has been a lawful permanent resident of the United States since February 28, 2001. On September 26, 2005, she pled guilty in federal court to trafficking in counterfeit goods in violation of 18 U.S.C. § 2320(a). The charges arose from Wang's operation between 1999 and 2002 of two software distribution companies that purchased and sold software programs with counterfeit marks of Microsoft Corporation ("Microsoft") and other companies. Pursuant to

a plea agreement, Wang was convicted and sentenced to two months imprisonment followed by three years supervised release, and was subject to eight special conditions of release. She and her co-defendants were ordered to pay restitution of $93,611 to Microsoft. On July 9, 2007, the court found Wang to be in violation of four conditions of her supervised release. She was sentenced to four months incarceration, followed by a further period of supervised release, which concluded on February 27, 2009.

In October 2010, Wang filed an application for naturalization with USCIS. USCIS denied her application on the ground that her conviction under 18 U.S.C. § 2320 was an aggravated felony—specifically, a crime involving fraud in which loss to the victim exceeded $10,000. 8 U.S.C. § 1101(a)(43)(M)(i). USCIS found that Wang therefore could not establish good moral character and was permanently ineligible for naturalization. USCIS also noted that Wang's conviction and probation violation showed a disregard for the laws of the United States. Wang requested reconsideration and USCIS issued a decision reaffirming its denial.

Wang filed a timely petition in federal district court requesting de novo review of the USCIS decision. *See* 8 U.S.C. § 1421(c). Both Wang and the government moved for summary judgment on the question whether her 2005 conviction was for an aggravated felony and whether that conviction would therefore permanently bar naturalization. The district court granted USCIS's motion and denied Wang's. The court held that a conviction under 18 U.S.C. § 2320(a) necessarily involves fraud or deceit. The district court also found that the plea agreement established that loss to the victim exceeded $10,000, and concluded that Wang

had been convicted of an aggravated felony as defined by 8 U.S.C. § 1101(a)(43)(M)(i). Wang timely appealed.

## II. Standard of Review

We review de novo the district court's grant of summary judgment. *Univ. Health Servs., Inc. v. Thompson*, 363 F.3d 1013, 1019 (9th Cir. 2004). We "review de novo the district court's conclusions of law," *United States v. Hovsepian*, 359 F.3d 1144, 1165 (9th Cir. 2004), including whether a particular offense constitutes an aggravated felony. *See Estrada-Rodriguez v. Mukasey*, 512 F.3d 517, 519 (9th Cir. 2007).

## III. Discussion

## A. Statutory Framework

The Immigration and Nationality Act ("INA") sets forth several eligibility requirements for naturalization. An individual wishing to become a naturalized citizen bears the burden of showing, among other things, that during the relevant statutorily-defined period she "has been and still is a person of good moral character." 8 U.S.C. § 1427(a). Although the INA does not define "good moral character," it does list individuals who shall *not* be regarded as having good moral character. *See* 8 U.S.C. § 1101(f). As amended by the Immigration Act of 1990, that list includes "one who at any time has been convicted of an aggravated felony (as defined in [8 U.S.C. § 1101(a)(43)])." *Id.* § 1101(f)(8). Accordingly, an individual convicted of an aggravated felony after November 29, 1990 is ineligible for naturalization. *See Alcozy v. USCIS*, 704 F.3d 795, 797 (9th Cir. 2012).

The definition of "aggravated felony" includes an offense that "involves fraud or deceit in which the loss to the victim or victims exceeds $10,000." 8 U.S.C. § 1101(a)(43)(M)(i) ("subsection (M)(i)"). To determine whether a particular offense necessarily involves fraud or deceit, we "employ a categorical approach by looking to the statute defining the crime of conviction, rather than to the specific facts underlying the crime." *Kawashima v. Holder*, 132 S. Ct. 1166, 1172 (2012). Under the categorical approach, we "presume that the conviction rested upon nothing more than the least of the acts criminalized, and then determine whether even those acts are encompassed by the generic federal offense." *Moncrieffe v. Holder*, 133 S. Ct. 1678, 1684 (2013). In other words, an individual has been convicted of an aggravated felony under subsection (M)(i) only if the elements of the offense for which she was convicted "necessarily entail fraudulent or deceitful conduct." *Kawashima*, 132 S. Ct. at 1172. We use a "circumstance-specific" approach to assess whether the loss to the victim exceeded $10,000. *Nijhawan v. Holder*, 557 U.S. 29, 38–39 (2009).

Wang was convicted of one count of trafficking in counterfeit goods under 18 U.S.C. § 2320(a). At the time of her offense, § 2320(a) provided that a person could be guilty of that offense by "intentionally traffic[king] or attempt[ing] to traffic in goods or services and knowingly us[ing] a counterfeit mark on or in connection with such goods or services." 18 U.S.C. § 2320(a) (2000). (The statute has since been amended several times, but the elements and relevant language remain the same.) The term "counterfeit mark" was defined, in relevant part, as:

(A) a spurious mark —

> (i) that is used in connection with trafficking in goods or services;

> (ii) that is identical with, or substantially indistinguishable from, a mark registered for those goods or services on the principal register in the United States Patent and Trademark Office and in use, whether or not the defendant knew such mark was so registered; and

> (iii) the use of which is likely to cause confusion, to cause mistake, or to deceive[.]

18 U.S.C. § 2320(e) (2000). The elements of the offense are that the defendant: (1) trafficked in goods or services; (2) intentionally; (3) used a "counterfeit mark" on or in connection with these goods or services; and (4) knew the mark was counterfeit. *See United States v. Giles*, 213 F.3d 1247, 1249 (10th Cir. 2000) (citing *United States v. Sultan*, 115 F.3d 321, 325 (5th Cir. 1997)); *accord United States v. Hamamoto*, 232 F.3d 897 (9th Cir. 2000) (unpublished disposition).

## B. Mistake and Confusion

The plain language of § 2320 makes clear that a crime under the statute is not limited to conduct involving fraud or deceit. Rather, to qualify as a "counterfeit mark," a defendant's use of the mark must be "likely to cause confusion, to cause mistake, *or* to deceive." 18 U.S.C.

§ 2320(e) (emphasis added).  Used together in a disjunctive list, the terms "confusion," "mistake," and "deceive" each must be read to have a distinct meaning.  *See Gustafson v. Alloyd Co., Inc.*, 513 U.S. 561, 574 (1995) ("[T]he Court will avoid a reading [of a statute] which renders some words altogether redundant.").  Some defendants will be guilty under § 2320(a) because they used counterfeit marks to "deceive," for example, by cheating buyers who believed they were purchasing the item for which the mark was registered. *See Kawashima*, 132 S. Ct. at 1172 (defining "deceit" in subsection (M)(i) as "the act or process of deceiving (as by falsification, concealment, or cheating)").  But the inclusion of the terms "mistake" and "confusion" indicates that at least some defendants may be guilty for conduct that would *not* constitute "deceit."

The legislative history of the statute supports this conclusion.  Section 2320 was enacted as part of the Trademark Counterfeiting Act of 1984 ("TCA"), and added criminal penalties for acts of trademark counterfeiting that had previously only been subject to civil liability.  *See* Pub. L. No. 98-473, § 1502, 98 Stat. 1837, 2178.  As the Eleventh Circuit has explained, early versions of the TCA made a defendant criminally liable only if she used the counterfeit mark with the intent to defraud or deceive.  *See United States v. Torkington*, 812 F.2d 1347, 1353 n.7 (11th Cir. 1987) (citing S. 875, 98th Cong., 1st Sess. (Mar. 22, 1983) and H.R. 2447, 98th Cong., 1st Sess. (Apr. 7, 1983)).  However, Congress specifically omitted this language from the final enacted bill.  *Id.*; *see also United States v. Yamin*, 868 F.2d 130, 132 (5th Cir. 1989) (finding no clear error in jury instruction that the prosecution "is not required to prove that the defendant ever had an intent to deceive or defraud anyone").    By eliminating the heightened mens rea

requirement, Congress made clear that neither fraud nor deceit is a necessary element of § 2320. Rather, a defendant need only have had knowledge that the use of a particular mark was likely to cause mistake or confusion.

Further, the mistake or confusion need not be on the part of the buyer of the counterfeit goods. Courts have long held that the confusion requirement in § 2320 is satisfied by "post-sale confusion." Under this doctrine, a seller of imitation items has violated trademark law if disinterested members of the general public would be confused were they to encounter the goods after sale. A seller can be convicted even though the direct buyer knows the goods are knock-offs. For example, in *Torkington*, the defendant sold replica Rolex watches at a flea market for $27. Although the low price made it clear to buyers that the watches were not actually made by Rolex, the Eleventh Circuit upheld the indictment, concluding that non-purchasers would likely be confused "should they encounter the allegedly counterfeit goods in a post-sale context." *Torkington*, 812 F.2d at 1352; *see also United States v. Hon*, 904 F.2d 803, 805 (2d Cir. 1990) ("[A] casual observer viewing a counterfeit watch, on the wrist of a friend, for instance, could easily be confused."). Other courts have approved convictions under § 2320 even when the seller explicitly informed the buyer that the item was a knock-off. *See United States v. Foote*, 413 F.3d 1240, 1243 (10th Cir. 2005) (upholding conviction of seller who advertised goods as "reproductions of brand-name products"); *United States v. Gantos*, 817 F.2d 41, 43 (8th Cir. 1987) (upholding a conviction where the defendant "told the undercover agent that the watches were copies"). The same rationale applies to post-sale mistake.

In many post-sale confusion and mistake cases, the defendant will not have deceived or defrauded anyone at all. For example, imagine a vendor selling imitation Gucci handbags on a street corner. The vendor attaches a tag to each handbag stating "not a real Gucci." The vendor may be convicted under § 2320 on the ground that a hypothetical third party, even one who never intends to purchase the real item, could be confused or mistaken when seeing the handbag on a buyer's arm weeks after the sale. *See Yamin*, 868 F.2d at 132. As this example demonstrates, the seller need not conceal the truth, and the third-party observer need not act on any mistaken belief, in order for there to be a valid conviction under § 2320. *Cf.* Black's Law Dictionary 685 (8th ed. 2004) (defining "fraud" as "[a] knowing misrepresentation of the truth or concealment of a material fact to induce another to act to his or her detriment"). Indeed, the third party need not even actually be confused or mistaken. *See Yamin*, 868 F.2d at 133 (rejecting defendant's argument that there must be "actual confusion" and finding the evidence sufficient for a jury to determine that imitation goods, once sold, "*had the potential* to deceive or to cause confusion or mistake" (emphasis added)). In short, because a defendant may violate § 2320 without engaging in fraudulent or deceitful conduct, a conviction under the statute cannot categorically qualify as an aggravated felony under subsection (M)(i). *See Kawashima*, 132 S. Ct. at 1172.

## C. *Tall v. Mukasey*

Our conclusion is not foreclosed by our prior opinion in *Tall v. Mukasey*, 517 F.3d 1115 (9th Cir. 2008). In *Tall*, the panel considered whether California's criminal trademark counterfeiting statute, Cal. Penal Code § 350, was a crime involving moral turpitude ("CIMT"). *Id.* at 1117. The

California statute prohibited "willfully manufactur[ing], intentionally sell[ing], or knowingly possess[ing] for sale any counterfeit of a mark," and defined counterfeit mark as "a spurious mark that is identical with, or confusingly similar to, a registered mark and is used on or in connection with the same type of goods or services for which the genuine mark is registered." *Id.* at 1119 (quoting Cal. Penal Code § 350(a), (e)(2)). The panel held that the California statute was a CIMT because it was an "inherently fraudulent crime," which we had previously defined as a crime "involv[ing] knowingly false representations made in order to gain something of value." *Id.* at 1119–20 (citing *Navarro-Lopez v. Gonzales*, 503 F.3d 1063, 1076 (9th Cir. 2007) (en banc) (Reinhardt, J., concurring for a majority)). We wrote that a violator of Cal. Penal Code § 350 "necessarily defrauds the owner of the mark, or an innocent purchaser of the counterfeit items, or both." *Id.* at 1020.

The government concedes that *Tall* does not control this case. The wording of the state statute at issue in *Tall* is different from the wording of 18 U.S.C. § 2320. Further, the question in *Tall* was whether a conviction under the state statute was a CIMT, not whether it was an aggravated felony. The government nonetheless argues that *Tall*'s reasoning is "instructive." But the differences just noted make the reasoning in *Tall* inapposite. *Tall* stated that a person convicted under the California trademark counterfeiting statute has necessarily "defraud[ed]" the owner of the mark. *Tall*, 517 F.3d at 1119. But "fraud," as used in subsection (M)(i), is an act in which a victim has "voluntarily surrendered his property because of an intentional perversion of truth, or otherwise acted upon a false representation to his injury." *Soliman v. Gonzales*, 419 F.3d 276, 282 (4th Cir. 2005) (internal quotation marks omitted) (citing Black's Law

Dictionary 788 (4th ed. 1951)); *see also id.* ("[F]raud occurs with consent that has been unlawfully obtained."). Under this definition, a trademark owner has not necessarily been "defrauded" by a seller of counterfeit goods, because the owner has not consented to the seller's use of the registered mark or taken any action in reliance on the seller's representations.

Even were we to apply the broader definition of "inherently fraudulent crime" that we have previously applied in CIMT cases, the federal trademark counterfeiting statute would not satisfy that definition. As cases applying § 2320 make clear, the federal crime encompasses situations where the defendant did not make "knowingly false representations." That is, a seller can be convicted of the offense even though she honestly and forthrightly disclosed that the goods for sale were unauthorized by the trademark owner. *See Foote*, 413 F.3d at 1243; *Gantos*, 817 F.2d at 43. At the time *Tall* was decided, no reported California case had applied the state trademark counterfeiting statute in a similar situation. The panel in *Tall* was therefore not directly confronted with the question that faces us here. A recent unpublished California Court of Appeal decision upheld a conviction under Cal. Penal Code § 350 in such a case. *See People v. Navarrete*, 2015 WL 5445926, at \*1 (Cal. Ct. App. Sept. 16, 2015) (noting that defendant told the buyer that the handbags with counterfeit marks were "pretty good replicas"). We express no opinion as to whether *Tall*'s conclusion that the California trademark counterfeiting statute requires "knowingly false representations" remains sound in light of this subsequent case law.

Conclusion

We hold that 18 U.S.C. § 2320 does not "necessarily entail fraudulent or deceitful conduct." Wang's conviction under this statute, pursuant to a categorical analysis, therefore cannot form the basis for a finding that she has been convicted of an aggravated felony under 8 U.S.C. § 1101(a)(43)(M)(i). *Kawashima*, 132 S. Ct. at 1172. We need not address whether the loss to the victim from Wang's convicted conduct exceeded $10,000.

The district court granted summary judgment to the government on the sole ground that Wang had been convicted of an aggravated felony and therefore could not establish good moral character. We reverse and remand to the district court for further proceedings consistent with this opinion.

**REVERSED and REMANDED.**