**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 09-4580**

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

v.

AHMED MOHAMMED SHAWAKHA,

Defendant - Appellant.

Appeal from the United States District Court for the Eastern District of North Carolina, at Wilmington.  James C. Fox, Senior District Judge.  (7:08-cr-00068-F-1)

Argued:  October 27, 2010            Decided:  January 31, 2011

Before NIEMEYER, SHEDD, and AGEE, Circuit Judges.

Affirmed by unpublished per curiam opinion.  Judge Shedd wrote a dissenting opinion.

**ARGUED:** H. Gerald Beaver, BEAVER, HOLT, STERNLICHT & COURIE, PA, Fayetteville, North Carolina, for Appellant.  Jennifer E. Wells, OFFICE OF THE UNITED STATES ATTORNEY, Raleigh, North Carolina, for Appellee.  **ON BRIEF:** George E. B. Holding, United States Attorney, Anne M. Hayes, Jennifer P. May-Parker, Assistant United States Attorneys, OFFICE OF THE UNITED STATES ATTORNEY, Raleigh, North Carolina, for Appellee.

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

Ahmed Shawakha pled guilty to conspiring to distribute and possessing with the intent to distribute more than 100 grams of marijuana, in violation of 21 U.S.C. § 846. Departing upward from the suggested Guidelines range, the district court sentenced Shawakha to 87 months' imprisonment. Shawakha now appeals, raising issues related to the calculation of his advisory Guidelines range, the district court's decision to upwardly depart, and the substantive reasonableness of his sentence. For the reasons stated herein, we affirm the judgment of the district court.

## I.

Shawakha conspired with Dwight Arnold and his father Audley Arnold to distribute drugs in the Fayetteville, North Carolina area. Dwight fronted Shawakha the drugs, Shawakha's contacts sold the drugs, and Shawakha gave the drug proceeds to Audley to pay Dwight.

One morning, Shawakha appeared unannounced at the FBI's office in Fayetteville, saying that he owed Jamaican drug dealers approximately $24,000, could not pay them, and that he needed the FBI's assistance. He noted that an initial shipment of 200 pounds of marijuana had already arrived and that he expected future shipments.

2

While Shawakha was talking to the FBI, he received phone calls instructing him to attend a meeting at a local restaurant. The FBI placed a wire on Shawakha, observed him pick up Audley, and continued surveillance while Shawakha attended the meeting. Conversation among the co-conspirators revealed that Dwight was at the meeting, although Shawakha had not expected him to be there. When the meeting was over, Shawakha and Audley took possession of 478 pounds of marijuana, which they initially transported to Audley's residence and then took to an industrial building owned by Shawakha.

Later that night, Shawakha provided authorities with written consent to search the property and they removed the 478 pounds of marijuana. Shawakha became "very irritated" during the removal process because no one had informed him the drugs would be seized, there was a large law enforcement presence on his property, and he was concerned his safety would be compromised. Joint Appendix ("J.A.") at 185. Once the drugs had been removed, the FBI allowed Shawakha to return home but instructed him to maintain contact. Over the following weekend, however, agents were unable to contact Shawakha and they found no indication that he was at his residence.

Shawakha resurfaced on Monday and told the FBI that he had taken his family to Pennsylvania for safekeeping. Agents subsequently decided to fit Shawakha with another wire and send

3

him to talk with Audley. The ensuing conversation did not go as agents expected and it became evident that both Shawakha and Audley were "upset." Id. at 187. Agents consequently called Shawakha and instructed him to leave the meeting. Shortly thereafter, authorities arrested Shawakha and Audley on state drug charges.

Shawakha posted bond the day after his arrest, was released, and contacted the FBI to let agents know that he was "out of jail." Id. at 189. FBI agents' subsequent attempts to contact Shawakha were unsuccessful. They did, however, receive news that a confidential informant had reported that Shawakha was traveling to California with the possible intent of "crossing the border into Mexico." Id. at 190. Agents responded by obtaining a second state warrant for Shawakha's arrest and forwarding it to California authorities who took Shawakha into custody.

The preceding events were given greater context once Audley began cooperating with police, as Audley explained that his last conversation with Shawakha went awry when Shawakha displayed the wire he was wearing, causing both of them to be "upset." Id. at 190-91. Audley also indicated that after authorities seized the 478 pounds of marijuana, Shawakha sent a mutual friend to him with $500 and a message to get out of town and then called Dwight to inform him the drugs were in police custody. The

4

veracity of Audley's information was significantly bolstered by the fact that he had a little more than $500 on his person at the time of his arrest. Phone records further verified that Shawakha placed a called to Dwight during the relevant period.

A federal grand jury charged Shawakha with conspiring to distribute and possessing with the intent to distribute more than 100 grams of marijuana, in violation of 21 U.S.C. § 846. Shawakha pled guilty to this charge pursuant to a written plea agreement, which included an appellate waiver. On appeal, Shawakha does not contest the validity of his guilty plea.

## II.

The Presentence Investigation Report ("PSR") assigned Shawakha a base offense level of 26. Shawakha then received a three-level upward adjustment for being a manager or supervisor of criminal activity, a two-level upward adjustment for obstruction of justice, and a three-level downward adjustment for acceptance of responsibility. This resulted in a total offense level of 28, which in combination with Shawakha's criminal history category of I established an advisory Guidelines range of 78 to 97 months' imprisonment.

Shawakha filed three primary objections to the PSR, arguing that (1) the 478 pounds of marijuana seized by law enforcement should not be attributed to him as relevant conduct, (2) he was

5

not a manager or supervisor of criminal activity, and (3) he was entitled to the benefit of the safety valve provision found in United States Sentencing Guidelines ("U.S.S.G.") § 5C1.2.

The district court held a hearing at which it allowed Shawakha and the Government to address these points. At the conclusion of that hearing, the district court indicated that it was considering an upward departure based on Shawakha's multiple acts of obstruction of justice. It then continued Shawakha's sentencing to give the parties time to research whether "multiple obstructions of justice" would constitute valid "grounds for an upward departure." J.A. at 203.

When Shawakha's sentencing hearing reconvened, the district court gave the parties another opportunity to address Shawakha's objections to the PSR, as well as the court's question regarding the propriety of an upward departure based on multiple acts of obstruction of justice. The district court ultimately declined to impose a manager/supervisor enhancement and adopted the PSR's other recommendations, but added a further two-level upward departure based on Shawakha's obstruction of justice, stating:

> [T]he court finds that the [initial] two level adjustment—enhancement for obstruction of justice does not adequately reflect the severity of the obstructive conduct engaged in by the defendant.
>
> Specifically, the defendant attempted to obstruct the prosecution of the instant offense on at least five occasions as referenced by his involvement in employing an unindicted co-conspirator to inform

6

Audley Arnold of the investigation of the instant offense, personally informing both Audley Arnold and Dwight Arnold of the investigation into their activities[,] compromising a meeting with Dwight Arnold and Audley Arnold by notifying them he was wearing a recording device, and attempting to avoid prosecution by fleeing to Mexico via California.

Id. at 226; see also id. ("Despite multiple acts of obstruction, the defendant received only a two level enhancement of the offense level pursuant to 3C1.1.").

The district court accordingly calculated Shawakha's offense level at 27, stating that it "considered each intervening offense level" and found that an offense level of 27 "adequately account[ed] for the defendant's obstructive conduct." Id. at 227. This resulted in an advisory Guidelines range of 70 to 87 month's imprisonment. Based on the "severity" of Shawakha's conduct, the district court determined that "a sentence at the upper end of the [Guidelines] range [was] necessary to meet the goal[s] of sentencing." Id. Accordingly, the court imposed a sentence of 87 months' incarceration, the high-end of the revised Guidelines range.

III.

On appeal, Shawakha argues the district court procedurally erred (1) in attributing the 478 pounds of marijuana to him as relevant conduct for purposes of sentencing, (2) in failing to accord him an offense level reduction pursuant to U.S.S.G

7

§ 5C1.2's safety valve provision, and (3) in departing upwards based on multiple acts of obstruction of justice. Shawakha further contends the district court substantively erred (4) in imposing an 87-month sentence.

In response, the Government contends Shawakha waived his right to raise the first two issues on appeal by virtue of his plea agreement. It also maintains that the district court's upward departure pursuant to U.S.S.G. § 5K2.0(a) was a proper exercise of the court's sentencing discretion. Lastly, the Government defends the district court's imposition of an 87-month sentence as substantively reasonable given the unique facts of his case.

IV.

"[T]he interpretation of plea agreements is rooted in contract law." United States v. Peglera, 33 F.3d 412, 413 (4th Cir. 1994). In construing such an agreement, we look to its "plain language" and seek "to ensure that each party receives the benefit of [its] bargain." United States v. Jordan, 509 F.3d 191, 195 (4th Cir. 2007) (quotation omitted). We thus enforce a waiver of appellate rights provided (1) the waiver is valid and (2) the issue sought to be appealed is within its scope. See United States v. Manigan, 592 F.3d 621, 627 (4th Cir. 2010).

The validity of Shawakha's appellate waiver is uncontested here, as the parties merely dispute the waiver's scope.[1] In his plea agreement, Shawakha agreed

> [t]o waive knowingly and expressly all rights, conferred by 18 U.S.C. § 3742, to appeal whatever sentence is imposed, including any issues that relate to the establishment of the advisory Guideline range, reserving only the right to appeal from a sentence in excess of the applicable advisory Guideline range that is established at sentencing.

J.A. at 113.

Shawakha emphasizes the agreement's language "reserving" his right "to appeal from a sentence in excess of the applicable advisory Guideline range . . . established at sentencing," id., in arguing that the district court's upward departure freed him to challenge all aspects of his 87-month sentence. The appellate waiver does not, however, indicate that Shawakha is precluded merely from appealing a sentence within the advisory Guidelines range. To the contrary, the plea agreement broadly states that Shawakha agreed to waive "all rights, conferred by 18 U.S.C. § 3742, to appeal <u>whatever sentence is imposed</u>, including <u>any issues that relate to the establishment of the</u>

---

[1] Even if Shawakha disputed the validity of his appellate waiver, we would conclude it is valid. The record indicates the district court carefully questioned Shawakha "concerning the waiver provision of the plea agreement during the Rule 11 colloquy" and that Shawakha understood "the full significance of the wavier." <u>Manigan</u>, 592 F.3d at 627 (quotations omitted).

9

advisory Guidelines range." Id. (emphasis added). The reservation of rights clause, in contrast, is purposefully narrow, extending "only" to Shawakha's "right to appeal from a sentence in excess of the applicable advisory Guidelines range that is established at sentencing." Id.

Read in context, the agreement's plain language reflects that Shawakha "only" reserved his right to appeal from an upward departure or variance, i.e., the portion of his "sentence in excess of the applicable advisory Guidelines range . . . established at sentencing." Id. Indeed, the plea agreement is specific that Shawakha "waive[d] . . . all rights . . . to appeal . . . any issues that relate to the establishment of [his] advisory Guideline range," which would include the attribution of 478 pounds of marijuana as relevant conduct and whether U.S.S.G. § 5C1.2's safety valve provision applies. Id. Doubtless, the waiver's language could have been more concise. But on this record we do not doubt that Shawakha understood that he reserved only the right to appeal an upward deviation from the advisory Guidelines range established at sentencing.

At Shawakha's Rule 11 hearing, the district court specifically inquired whether Shawakha "underst[ood] that [he] reserve[d] only the right to appeal from an upward departure from the advisory guideline established at sentencing and that [he] otherwise waive[d] all rights to appeal whatever sentence

10

[was] imposed." <u>Id.</u> at 110. Shawakha replied, "Yes, Sir." <u>Id.</u> Accordingly, we conclude Shawakha has waived the first two issues he raises on appeal, as they "relate to the establishment of [his] advisory Guideline range." <u>Id.</u> at 113.

V.

Because the last two issues Shawakha raises on appeal do not relate to his initial advisory Guidelines range but pertain to the district court's upward departure from that range, they are validly before this Court on appeal. Shawakha first challenges the district court's finding that he committed multiple acts of obstruction of justice sufficient to justify an upward departure under U.S.S.G. § 5K2.0. Specifically, Shawakha argues that the district court misconstrued the record and predicated its upward departure on improper factors.

U.S.S.G. § 5K2.0(a)(3) allows the district court to base a departure on a "circumstance . . . taken into consideration in determining the [G]uideline range" provided this factor "is present in the offense to a degree substantially in excess of . . . that which ordinarily is involved in that kind of offense." Here, the district court concluded that Shawakha committed five acts obstructing justice, which rendered this an "exceptional case" in which an upwards departure was justified under § 5K2.0(a)(3), despite the fact that Shawakha already

11

received a two-level enhancement for obstructing justice in the computation of his initial sentencing range.

Shawakha claims the district court incorrectly stated that he "compromise[d] a meeting with Dwight Arnold and Audley Arnold by notifying them he was wearing a recording device[]." Opening brief at 21. We normally review the district court's factual findings "under the clearly erroneous standard," but "where, as here, the defendant did not object to the finding below, the finding is reviewable only for plain error." United States v. Wells, 163 F.3d 889, 900 (4th Cir. 1998). To meet the plain-error standard, Shawakha must establish (1) an error; (2) that is plain; (3) that affected his substantial rights; and (4) seriously affected the fairness, integrity, or public reputation of judicial proceedings. See United States v. Lipford, 203 F.3d 259, 271 (4th Cir. 2000).

Shawakha is correct that the district court mistakenly stated that he compromised a meeting with both Dwight and Audley Arnold by notifying them he was wearing a recording device. Only Audley was present at the meeting in which Shawakha displayed his wire. We agree with the Government, however, that "[t]his slip of the tongue is not material." Response Brief at 23. The fact that Shawakha revealed the wire he was wearing to one coconspirator, rather than two, does not meaningfully affect the district court's departure analysis. Shawakha is thus

12

unable to show that the district court's factual error caused him prejudice, even if we assume this error was plain.

Shawakha also contends that there was insufficient evidence for the district court to conclude that he was attempting to avoid prosecution by traveling to California. Because Shawakha preserved this argument below, we review the district court's factual finding for clear error. See Wells, 163 F.3d at 900. A district court at sentencing need only establish facts "by a preponderance of the evidence." United States v. Young, 609 F.3d 348, 357 (4th Cir. 2010). We conclude that standard is met here. By the time Shawakha traveled to California, he was out on bond, had previously revealed the FBI's investigation to two of his coconspirators, and actively enticed one of them to flee in order to elude police custody. It was not clearly erroneous for the district court to conclude that Shawakha traveled to a border state with the intent of eluding custody himself.

In addition, Shawakha maintains that even if the evidence was sufficient to establish that he was attempting to flee from custody, such flight does not constitute obstructing justice under U.S.S.G. § 3C1.1. Shawakha is correct that application notes 5 to U.S.S.G. § 3C1.1 indicates that "avoiding or fleeing from arrest" does not trigger an "adjustment" for obstructing justice. But the record reveals that Shawakha failed to make this argument before the district court, so we review this issue

only for plain error. See United States v. Stewart, 256 F.3d 231, 251 (4th Cir. 2001).

In short, we conclude that even if the district court erred in considering Shawakha's flight to California as an act obstructing justice within the meaning of the Guidelines, Shawakha cannot demonstrate that this error caused him prejudice. The district court clearly indicated that its upward departure was also based on Shawakha (1) sending $500 to Audley with a message to get out of town, (2) calling Dwight to inform him that police were in possession of the 478 pounds of marijuana, and (3) exposing his wire to Audley.[2] These acts were sufficient, in and of themselves, to support the district court's modest two-level upward departure.

Shawakha further suggests that his conduct was legally insufficient to support an upward departure under U.S.S.G. 5K2.0(a)(3). We disagree. It is well established "that multiple acts of obstruction of justice may warrant an upward departure" under the Guidelines. United States v. Milton, 147 F.3d 414, 421 (5th Cir. 1998). Given the district court's "sizeable discretion" in sentencing, United States v. Abu Ali,

---

[2] We reject Shawakha's argument that the district court failed to adequately explain its chosen sentence. The district court's reasoning was straightforward and clear. Furthermore, the three instances of obstruction of justice noted above clearly justify an additional two-level enhancement.

14

528 F.3d 210, 266 (4th Cir. 2008), and Shawakha's serious acts of obstruction, we cannot say the district court legally erred in determining that Shawakha engaged in a degree of obstruction "substantially in excess of . . . that which ordinarily is involved" in a case in which a defendant receives an obstruction-of-justice enhancement. U.S.S.G. § 5K2.0(a)(3).

Lastly, Shawakha contends that his 87-month sentence is substantively unreasonable. We review the substantive reasonableness of the district court's chosen sentence for an abuse of discretion. See Abu Ali, 528 F.3d at 274. Although we look to the "extent of the difference between a particular sentence and the recommended Guidelines range," we give "due deference to the district court's decision" and will not "reverse simply because we might reasonably have concluded that a different sentence was appropriate." Id. at 261 (quotations omitted).

In this case, we cannot conclude that Shawakha's 87-month sentence was substantively unreasonable. Shawakha committed three serious acts of obstruction, which the district court reasonably determined required an additional two-level enhancement. The district court then calculated Shawakha's revised Guidelines range and chose a sentence that comported with the high-end of that range. Although an 87-month sentence was not the only reasonable sentence Shawakha could have

15

received, it constitutes a legitimate exercise of the district court's sentencing discretion and must therefore be affirmed.

VI.

For all of the foregoing reasons, the judgment of the district court is affirmed.

<u>AFFIRMED</u>

SHEDD, Circuit Judge, dissenting:

The majority holds that Shawakha waived his right to appeal any issues relating to the establishment of his advisory Guidelines range, and it affirms Shawakha's sentence upon its consideration of the two issues it deems not to have been waived. In my view, the majority misreads the appeal waiver provision and, in doing so, precludes Shawakha from raising the additional issues, one of which has merit. Therefore, I dissent.

Shawakha waived his right "to appeal whatever sentence is imposed, including any issues that relate to the establishment of the advisory Guideline range." However, he <u>reserved</u> the right "to appeal from <u>a sentence</u> in excess of the applicable advisory Guideline range." J.A. 113 (emphasis added). Shawakha's sentence clearly exceeds the advisory Guideline range. Therefore, the plain language of the plea agreement allows Shawakha to appeal his entire sentence, not merely some limited portion of it. Therefore, the appeal waiver does not limit him to appealing only the upward deviation from his advisory Guideline range.[*]

---

[*] If the plain language of Shawakha's plea agreement is also open to the majority's reading, the language is ambiguous. Consequently, it should be construed against the government to find that Shawakha reserved the right to appeal his entire sentence. See <u>United States v. Harvey</u>, 791 F.2d 294, 300-301 (Continued)

17

Accordingly, I believe all four issues Shawakha raises on appeal are validly before this Court. Of those four issues, I believe one has merit. In my view, the district court erred when it failed to explain its rationale for denying Shawakha's request for a downward adjustment pursuant to the safety valve provisions of USSG § 5C1.2(a). The PSR states that Shawakha was ineligible for safety valve relief because of his status as a manager or supervisor of criminal activity. J.A. 251. However, during sentencing, the court granted Shawakha's objection to the finding that he was a manager or supervisor. Yet the court still denied Shawakha's request for safety valve relief without stating a basis for this ruling. J.A. 225. Given these facts, if Shawakha is able to meet the criteria of USSG § 5C1.2(a), he is entitled to a two-level reduction of his offense level pursuant to USSG §2D1.1(b)(11). For this reason, I would remand to the district court for resentencing.

-------------------

(4th Cir. 1986) (where a plea agreement is ambiguous in its terms, the terms must be construed against the government, especially where "the Government has proffered the terms or prepared a written agreement").

18