# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

March 28, 2012

No. 10-51189

Lyle W. Cayce
Clerk

UNITED STATES OF AMERICA,

Plaintiff–Appellee

v.

TROY DARNELL CLAIBORNE,

Defendant–Appellant

Appeal from the United States District Court
for the Western District of Texas

Before JONES, Chief Judge, PRADO and SOUTHWICK, Circuit Judges.

PER CURIAM:

This case deals with the district court's application of the obstruction of justice enhancement and non-application of the minor role reduction to Defendant–Appellant Troy Claiborne's sentence for aiding and abetting the possession with intent to distribute crack cocaine. We AFFIRM.

## I. FACTUAL AND PROCEDURAL BACKGROUND

On July 22, 2010, an Odessa Police Department narcotics detective received information from a confidential informant ("CI") that a black male, known as "Twin," would be selling two ounces of crack to the CI in the H.E.B. parking lot in Odessa, Texas that night. According to the CI, Twin would be driving a white Impala with California licenses plates. Based on this tip,

detectives set up surveillance in the parking lot and observed a white Impala matching the CI's description enter and park in the lot. Two black men exited the car and "were looking around suspiciously as if they were looking for someone." Detectives approached the men, who identified themselves as Troy Claiborne and Levale Weldon. As they were all walking back to the car, a detective noticed a plastic bag underneath the car on the driver's side just in front of the driver's-side rear tire. The bag contained eight individually-wrapped packages of crack. Weldon, who owned the Impala, consented to a search of it, and detectives found white residue, which tested positive for cocaine, on the floorboards of both the driver's and the passenger's side.

Also during the search, three cell phones were recovered—a Samsung, a Blackberry, and a Motorola. Weldon claimed the Samsung phone was his, and Claiborne claimed the Motorola. Claiborne initially denied that the Blackberry was his, but he later claimed the phone. The Blackberry contained text messages that a detective believed involved drug transactions. Detectives discovered that the CI had called the Motorola phone when setting up the purchase. At the time of their arrest, Weldon had $580 on him, and Claiborne had $1,232. Claiborne claimed that he was unemployed but that he made money gambling and playing pool. Detectives showed the CI photographs of Weldon and Claiborne, and the CI identified Weldon as "Twin." The CI did not, however, recognize Claiborne.

After the arrests, Claiborne and Weldon were placed in a police car. While seated in the backseat, Weldon unbuckled both of their seatbelts. Weldon then started in on a conversation with Claiborne about escaping, asking "Is your window all the way down like mine?"; "Did he already seat belt you?"; and "Can you open it up from your door? . . . ['C]uz its gonna take him longer to get to your side." Claiborne's only response to these questions was when Weldon asked, "You hear me?," Claiborne replied, "Um-hmm." Weldon went on to

No. 10-51189

explain, "He's [the detective] gonna try to shut that door . . . pursuing a chase on you . . . cuz one of us is gonna get away . . . I just can't live no more . . . ."

After pleading guilty without a plea agreement to aiding and abetting the possession with intent to distribute five grams or more of crack, *see* 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(B)(iii) and 18 U.S.C. § 2, a Presentence Investigation Report ("PSR") was prepared for Claiborne.  The probation officer found that Claiborne had attempted to escape from the police car and recommended enhancing the offense level for obstructing justice.  She calculated a total offense level of 27—base level of 28, *see* U.S. Sentencing Guidelines Manual §§ 2D1.1(c)(6) and (a)(5) (2010), a two-level increase for obstruction of justice, *see id.* at § 3C1.1, and a three-level decrease for acceptance of responsibility, *see id.* at § 3E1.1.  When combined with a criminal history category of I, Claiborne's Guidelines range sentence was 70 to 87 months imprisonment.  *See id.* at ch. 5, pt. A.

Claiborne filed objections to the PSR, arguing, *inter alia*, that he should have received a downward adjustment to his offense level, pursuant to § 3B1.2, because he was a minor participant.  The district court determined that Claiborne had not met his burden of establishing that he was substantially less culpable than Weldon.  The district court imposed a 78-month prison sentence, in the middle of the Guidelines range, stating, "I'm not departing from the recommended sentence." Claiborne timely appealed.

## II.  STANDARD OF REVIEW

Issues related to a defendant's sentence are reviewed for reasonableness. *United States v. Cisneros-Gutierrez*, 517 F.3d 751, 764 (5th Cir. 2008).  This reasonableness determination takes the form of abuse of discretion review.  *Id*. There is a two-step process for this review: "first[,] ensure that the district court committed no significant procedural error"; and second, "consider[] the substantive reasonableness of the sentence imposed."  *Id*. (internal quotation

No. 10-51189

marks omitted).   In going through this two-step process, "a district court's interpretation or application of the Sentencing Guidelines is reviewed de novo, and its factual findings are reviewed for clear error."   *Id.* (internal quotation marks omitted).   "A factual finding is not clearly erroneous if it is plausible in light of the record read as a whole."   *United States v. Villanueva*, 408 F.3d 193, 203 (5th Cir. 2005).

## III.  DISCUSSION

### A.    Non-Application of the Minor Role Reduction

A district court may decrease a defendant's offense level by two levels if it finds that the defendant was a minor participant in the offense.   U.S.S.G. § 3B1.2(b).  The minor role reduction applies to a defendant "who is less culpable than most other participants, but whose role could not be described as minimal." *Id.* at § 3B1.2, cmt. n.5.   This reduction applies only "when a defendant is substantially less culpable than the average participant."  *Villanueva*, 408 F.3d at 204 (citation and internal quotation marks omitted).   "It is not enough that a defendant does less than other participants; in order to qualify as a minor participant, a defendant must have been peripheral to the advancement of the illicit activity."  *Id.* (internal quotation marks).   "A defendant has the burden of showing that he is entitled to the downward adjustment."   *United States v. Garcia*, 242 F.3d 593, 597 (5th Cir. 2001).

Claiborne argues that he acted as a minor participant because (1) the CI implicated only Weldon, (2) Weldon was driving the Impala on the day of their arrest and the car belonged to him, and (3) the cocaine was found near the driver's   rear   tire,   leading   to   the   conclusion   that   Weldon—not Claiborne—possessed the drugs prior to putting them under the tire.  The facts show that Claiborne admitted that he possessed the drugs with the intent to distribute them "along with Mr. Weldon."  Both Claiborne and Weldon, upon arriving at the H.E.B. parking lot, exited the Impala and looked around

"suspiciously as if they were looking for someone." These actions lead to the conclusion that Claiborne was involved in the sale to the CI and not a mere bystander or passenger. Additionally, detectives found cocaine residue on both the driver's and the *passenger's* floorboards. Claiborne's Blackberry contained text messages that a detective believed involved drug transactions, and at the time of his arrest, Claiborne had $1,232 in cash—despite his claim that he was unemployed). Finally, the CI called the Motorola cell phone, which Claiborne claimed was his, to arrange the crack purchase. Although Claiborne might have been less culpable than Weldon, based on the foregoing facts, Claiborne's participation was not peripheral to the advancement of the illicit activity. *See Villanueva*, 408 F.3d at 204. Because Claiborne was not substantially less culpable than the average participant, the district court did not clearly err when it denied him the minor role reduction under § 3B1.2(b). *See id.*

## B.    Application of the Obstruction of Justice Enhancement

A defendant is subject to a two-level increase in his offense level if he "willfully obstructed or impeded, or attempted to obstruct or impede, the administration of justice." U.S.S.G. § 3C1.1. This adjustment is warranted where a defendant escaped or attempted to escape from custody. *Id.* at § 3C1.1, cmt. n.4(E). Claiborne argues that the PSR demonstrates that Weldon, not Claiborne, attempted to escape. He notes that Weldon unbuckled their seatbelts and that Claiborne did not assist, speak to, or communicate with Weldon, except when Claiborne replied that he had heard Weldon's plan to escape.

Claiborne, however, failed to object to the application of the two-level enhancement for obstruction of justice at the district court. This failure to object below forecloses our review because "[a] district court's determination that a defendant has obstructed justice is a factual finding," *United States v. Cisneros*, 112 F.3d 1272, 1279 (5th Cir. 1997), and "[q]uestions of fact capable of resolution by the district court upon proper objection at sentencing can never constitute

plain error," *United States v. Lopez*, 923 F.2d 47, 50 (5th Cir. 1991) (per curiam) (citing *United States v. Mourning*, 914 F.2d 699, 703 (5th Cir. 1990)).

## IV.  CONCLUSION

For the foregoing reasons, we AFFIRM Claiborne's sentence.

No. 10-51189

EDITH H. JONES, Chief Judge, concurring:

I concur in the per curiam opinion, which faithfully follows our twenty year old precedent establishing that findings of fact by a district court are not subject to reversal for "plain error." *United States v. Lopez*, 923 F.2d 47 (5th Cir. 1991), *cert. denied*, 500 U.S. 924, 111 S. Ct. 2032 (1991). But I am also constrained to respond to Judge Prado's challenge to this precedent. For the sake of brevity, I do so in short points.

First, plain error is by definition error so clear and obvious that the district court should not have erred in the first place. *United States v. Olano*, 507 U.S. 725, 734, 113 S. Ct. 1770, 1777 (1993). As the factfinder in sentencing, the district court is not bound by the rules of evidence, and its findings are shielded by the clear error standard even when an appellant preserves error for appeal. Because so many sentencing findings amount to judgment calls, based in part on the trial court's intimate knowledge of local probation and law enforcement practices, it seems nearly inconceivable that we could deem their factual findings "plainly erroneous" under the *Olano* definition. Further, to allow appellate second-guessing when no factual error was pointed out below erodes the distinction between plain error and clear error.

Second, restricting plain error review to issues of law is hardly unfair to defendants. Under current sentencing procedures, each defendant and his attorney has ample advance access to the PSR. They can respond directly to the facts identified as pertinent in the PSR, subject, of course, to rebuttal by the probation officer and the government. They are well aware of the district court's fact finding duties and have the opportunity to prepare and persuade the district court of their view of the facts. We ought to assume that counsel will have conferred with the client about the facts concerning sentencing. It seems highly unlikely that a competent counsel will fail to timely raise a factual objection to an enhancement in the district court.

No. 10-51189

Third, this court has, far more often than not, followed *Lopez.  See, e.g.*, *United States v. Conn*, 657 F.3d 280, 284 (5th Cir. 2011) (citing *Lopez*, 923 F.2d at 50), and legions of unpublished Fifth Circuit decisions.[1] That a few opinions of this court fail to follow *Lopez* in the past twenty years says less about our established court precedent than it does about the potential for error in the increasingly complex law of federal sentencing.

Fourth, this case illustrates why we should not be in the business of reviewing factfindings on appeal. The evidence relating to the foiled attempt to escape from the patrol car is a videotape in which most of the action, admittedly, is committed by Claiborne's co-defendant. The sequence of events was equally obvious to Claiborne and his counsel as to the trial court, yet the defendant failed to point out his alleged passivity to the district court. From what superior vantage point can we say there is "no evidence" to support the enhancement, when in fact Claiborne's seatbelt was found undone by the officers, and on the videotape he responds "um-hmm" to an escape query from the other defendant? The district court might have looked at this video more carefully if Claiborne had raised the issue; had it done so, we would have no real basis to declare a fact finding either way — supporting or rejecting an obstruction enhancement — clear error. To apply "plain error" here would amount to our simply replacing the factfinder's function with a de novo interpretation of the evidence.

Finally, the fulcrum of the desire to employ plain error review to sentencing fact issues is the potential impact on the defendant's sentence if the

---

[1] The majority of the recent unpublished opinions follow *Lopez. See United States v. Aguirre*, No. 10-51167, 2012 WL 11046 *2 (5th Cir. Jan. 4, 2012); *United States v. Marquez-Murillo*, No. 11-50281, 2011 WL 6934419 *1 (5th Cir. Dec. 30, 2011); *United States v. Castillo*, 445 Fed. Appx. 784, 784-85 (5th Cir. 2011); *United States v. Salizar-Pro*, 442 Fed. Appx. 908, 910 (5th Cir. 2011); *United States v. Miller*, 450 Fed. Appx. 336, 338-39 (5th Cir. 2011); *United States v. Candrick*, 435 Fed. Appx. 404, 406 (5th Cir. 2011); *United States v. Zamora-Melgoza*, 396 Fed. Appx. 121, 122 (5th Cir. 2010); *United States v. Mendoza*, 395 Fed. Appx. 144, 145 (5th Cir. 2010).

No. 10-51189

guidelines are misapplied. But the defendant's term of imprisonment is not the only consideration relevant to the standard of review. I have already explained why appellate courts are singularly ill-suited to reviewing unobjected-to facts pertinent to sentencing. It is also important that the public, represented by the government, be apprised of potential sentencing defects at the trial level, in order to save resources and utilize law enforcement capabilities efficiently. Every resentencing compelled following plain error review imposes costs and dangers when a defendant is remitted from prison back (perhaps hundreds of miles) to the sentencing court. Arguably, district courts spend more time trying to foresee and prevent reversal based on the errors not pointed out to them. In any event, they are blindsided and their schedules adversely affected by the disorderliness of allowing criminal defendants to prevail on issues raised for the first time on appeal. The balance of hardships is shared among the defendant, the public and the courts, it seems to me, when the proper sentencing objections are not raised in the trial court.

Because I contend that plain error review should not be applied to this purely factual determination of obstruction of justice, I need only add that I would be strongly disinclined to find plain error if we did use that standard.

No. 10-51189

EDWARD C. PRADO, Circuit Judge, concurring:

I write separately to discuss the court's review (or rather, the lack thereof) of Claiborne's claim that the district court erred in applying the obstruction of justice enhancement under U.S.S.G. § 3C1.1.

Generally, failure to object to an error at the district court limits this court's review to plain error. *United States v. Villegas*, 404 F.3d 355, 358 (5th Cir. 2005) (per curiam); *see also* Fed. R. Crim. P. 52(b). This standard requires that the defendant show (1) error, (2) that is clear or obvious, (3) and that affects his substantial rights; (4) if the elements are satisfied, this court may exercise its discretion to remedy the error if it seriously affects the fairness, integrity, or public reputation of judicial proceedings. *Puckett v. United States*, 556 U.S. 129, 135 (2009). In this case, the court declines to review Claiborne's claimed error as to the application of the obstruction of justice enhancement based on the rule from *United States v. Lopez*, 923 F.2d 47 (5th Cir. 1991) (per curiam), that "'[q]uestions of fact[1] capable of resolution by the district court upon proper

[1] In her concurrence, Chief Judge Jones emphasizes the special role the sentencing court plays in finding facts, a role which I do not challenge. It should be noted, however, that the issue of whether the determination that § 3C1.1's requirements are met is not so clearly a question of fact. The court correctly, based on this circuit's earliest-case controls rule, holds that "'[a] district court's determination that a defendant has obstructed justice is a factual finding.'" Per Curiam Op., *supra*, at 5 (quoting *United States v. Cisneros*, 112 F.3d 1272, 1279 (5th Cir. 1997)); *cf. United States v. Paden*, 908 F.2d 1229, 1236 (5th Cir. 1990) ("[T]he district court's determination [that a two-level enhancement under § 3C1.1] is subject to the 'clearly erroneous' standard of review."). However, there is an intra- and an inter-circuit split as to whether a § 3C1.1 determination is to be reviewed as a question of fact or as a question of law. *Compare Cisneros*, 112 F.3d at 1279 (question of fact) *with United States v. Brown*, 470 F.3d 1091, 1093–94 (5th Cir. 2006) (question of law: "For an obstruction-of-justice enhancement, the district court's factual findings—its findings as to what acts were performed—are reviewed only for clear error. . . . A ruling that those findings permit an obstruction-of-justice enhancement is a question of law, reviewed *de novo*."); *compare United States v. Mabie*, 663 F.3d 322, 334 (8th Cir. 2011) (determination that the § 3C1.1 enhancement applies is a question of law/reviewed de novo), *United States v. Doe*, 661 F.3d 550, 565 (11th Cir. 2011) (same), *United States v. Taylor*, 637 F.3d 812, 817 (7th Cir. 2011); *United States v. Cordova Barajas*, 360 F.3d 1037, 1043 (9th Cir. 2004), *United States v. Villarman-Oviedo*, 325 F.3d 1, 16 (1st Cir. 2003), *United States v. Brown*, 321 F.3d 347, 351 (2d Cir. 2003), *and United States v. Jones*, 308 F.3d 425, 427 (4th Cir. 2002), *with United States v. Jackson-Randolph*, 282 F.3d 369, 390 (6th Cir. 2002) (question of fact reviewed for clear error); *see also United States v. Henry*, 557 F.3d 642, 645 (reviewed for due deference); *United States v. Bedford*, 446 F.3d

No. 10-51189

objection at sentencing can never constitute plain error.'"  Per Curiam Op., *supra*, at 5–6 (quoting *Lopez*, 923 F.2d at 50) (footnote added).  Yet, we have not relied exclusively on this rule in reviewing unobjected-to applications of Guidelines enhancements.

In *United States v. Pattan,* 931 F.2d 1035 (5th Cir. 1991), this court addressed, in the context of the district court's enhancement under § 3C1.1, "whether, under the plain error standard, [it] should evaluate the adjustments based solely on the factual findings actually made by the trial judge or whether [it] should consider the entire record when [it] evaluate[s] the adjustments." *Id.* at 1042–43.  It resolved that, "[g]iven the minimal nature of our review, we find it appropriate to consider all of the evidence in the record supporting the adjustments, and will uphold the adjustments if the record as a whole demonstrates that the adjustments did not result in a miscarriage of justice." *Id.* at 1043.  Plain error has previously been described by this court as "error so obvious that our failure to notice it would seriously affect the fairness, integrity, or public reputation of the judicial proceedings and result in a miscarriage of justice."  *United States v. Peltier*, 505 F.3d 389, 391 n.3 (5th Cir. 2007) (alteration and internal quotation marks omitted).  My reading of *Pattan* is that unobjected-to errors in the application of the Guidelines are to be reviewed under the typical plain error standard of Rule 52(b).

Neither the rule from *Lopez* nor the plain error review suggested in *Pattan*, however, has been consistently adhered to by our court; in fact, this court has more often applied plain error analysis to review of an unobjected-to

---

1320, 1324 (10th Cir. 2006) (mixed question of law and fact that is reviewed for clear error).  As there is substantial authority that § 3C1.1 determinations are, at the very least, mixed question of law and fact that are to be reviewed de novo, Chief Judge Jones overstates the interference with district courts that our court would have by reviewing these types of questions.

enhancement under § 3C1.1.[2] *Compare United States v. Akinosho*, 285 F. App'x 128, 130 (5th Cir. 2008) (applying *Lopez*) *with United States v. Stevenson*, 97 F. App'x 468, 470 (5th Cir. 2004) (conducting a typical plain error analysis) *and United States v. Huerta*, 182 F.3d 361, 366 (5th Cir. 1999) (same). Where, as here, two lines of precedent conflict, our rule is to follow the earlier opinion. *United States v. Wheeler*, 322 F.3d 823, 828 n.1 (5th Cir. 2003). Therefore, because *Lopez* predates *Pattan*, the court is correct to apply *Lopez* and foreclose review. Nonetheless, I believe the *Lopez* rule to be inferior and think that our review of unobjected-to enhancement under the Guidelines ought to be for plain error.

The Supreme Court has stated that "[a] rigid and undeviating judicially declared practice under which courts of review would invariably and under all circumstances decline to consider all questions which had not previously been specifically urged would be out of harmony with . . . the rules of fundamental justice." *United States v. Olano*, 507 U.S. 725, 732 (1993) (alteration and ellipsis in original) (internal quotation marks omitted). In so doing, it drew on its prior opinion in *Hormel v. Helvering*, 312 U.S. 552 (1941).

> Ordinarily an appellate court does not give consideration to issues not raised below. For our procedural scheme contemplates that parties shall come to issue in the trial forum vested with authority to determine questions of fact. This is essential in order that parties

---

[2] Chief Judge Jones states in her concurrence that "[t]he majority of the recent unpublished opinions follow *Lopez*," but she does not confine her universe to the specific context of the obstruction of justice enhancement under § 3C1.1; she also includes a host of other determinations made by district judges under the Guidelines. *See* Jones Op., *supra*, at 2 n.1. I am not suggesting that every determination made under the Guidelines needs to be reviewed for plain error, but there is a distinction between "minor, detailed, [and] interstitial question[s] of sentencing law," which are given "due deference," *Buford v. United States*, 532 U.S. 59, 64 (2001), and "interpretive question[s]" requiring application of the Guidelines such as the enhancing a defendant's sentence for obstructing justice or making a "downward adjustment for acceptance of responsibility." *See United States v. McLaughlin*, 378 F.3d 35, 38 n.1 (1st Cir. 2004); *see also United States v. Vasquez*, 389 F.3d 65, 73–75 (2d Cir. 2004).

No. 10-51189

> may have the opportunity to offer all the evidence they believe relevant to the issues which the trial tribunal is alone competent to decide; it is equally essential in order that litigants may not be surprised on appeal by final decision there of issues upon which they have had no opportunity to introduce evidence.

*Hormel*, 312 U.S. at 556. However, as the Court went on to say, "[r]ules of practice and procedure are devised to promote the ends of justice, not to defeat them." *Id.* at 557. Continued adherence to the *Lopez* rule does just that. It defeats the ends of justice by eschewing plain error's balance of the competing concerns that errors be pressed in the district court before being pursued here and that our rules do not allow for miscarriages of justice.[3] The *Lopez* rule replaces this nice balance with a rigid rule that insulates from this court's review misapplication of sentencing enhancements.

Moreover, the *Lopez* rule puts us out of step with our sister circuits, as no other circuit court adheres to the *Lopez* rule. Each of the other circuit courts has articulated that unobjected-to Guideline enhancements are to be reviewed for plain error.[4] In *United States v. Montgomery*, 379 F. App'x 527 (6th Cir. 2010), the Sixth Circuit noted, "[s]everal circuits have held that 'questions of fact

---

[3] Proving plain error is no easy feat. As this court has previously stated, "[t]he burden of showing plain error is a heavy one." *United States v. Andrews*, 22 F.3d 1328, 1341 (5th Cir. 1994) (internal quotation marks omitted). It requires error that is "so obvious and substantial that failure to notice and correct it would affect the fairness, integrity or public reputation of judicial proceedings." *Lopez*, 923 F.2d at 50. The "high bar" erected, *United States v. Morin*, 627 F.3d 985, 1000 (5th Cir. 2010) (internal quotation marks omitted), gives defendants great incentive to raise error before the district court while allowing this court to step in and correct those substantial errors that demand amelioration.

[4] *See, e.g.*, *United States v. Sahakian*, 446 F. App'x 861, 863 (9th Cir. 2011); *United States v. Jumah*, 599 F.3d 799, 811 (7th Cir. 2010); *United States v. Poe*, 556 F.3d 1113, 1128 (10th Cir. 2009); *United States v. Massey*, 443 F.3d 814, 818 (11th Cir. 2006); *United States v. Villafane-Jimenez*, 410 F.3d 74, 84 n.9 (1st Cir. 2005); *United States v. Dixon*, 360 F.3d 845, 847 (8th Cir. 2004); *In re Sealed Case*, 349 F.3d 685, 690 (D.C. Cir. 2003); *United States v. Brennan*, 326 F.3d 176, 200 (3d Cir. 2003); *United States v. Clark*, 28 F. App'x 34, 37 (2d Cir. 2001); *United States v. Wells*, 163 F.3d 889, 900 (4th Cir. 1998); *United States v. Barajas-Nunez*, 91 F.3d 826, 830 (6th Cir. 1996).

capable of resolution by the district court upon proper objection at sentencing can never constitute plain error.'" *Id.* at 530 (alteration omitted) (quoting *Lopez*, 923 F.2d at 50) (citing *United States v. Bush*, 405 F.3d 909, 922 (10th Cir. 2005); *United States v. Elion*, 15 F. App'x 14, 16 (1st Cir. 2001); *United States v. Alford*, 25 F.3d 1041 (4th Cir 1994)). In *Montgomery*, the court chose not to "go that far" and resolved the case on plain error analysis. *Montgomery*, 379 F. App'x at 530. Additionally, since *Bush*, *Elion*, and *Alford*, each of these circuits has used the typical plain error review in analyzing unobjected-to enhancements under § 3C1.1. *See United States v. Salazar*, 446 F. App'x 110, 112 (10th Cir. 2011); *United States v. Shawakha*, 410 F. App'x 658, 663–64 (4th Cir. 2011); *United States v. Villafane-Jimenez*, 410 F.3d 74, 84 n.9 (1st Cir. 2005). It is clear then that the courts that have dabbled with the *Lopez* rule, including our own, have moved away from it.

Finally, this is not merely an esoteric argument about the role of this court in reviewing sentencing decisions of the district courts or about the proper balance between competing procedural concerns. Failure to review Claiborne's claim that the district court misapplied the obstruction of justice enhancement will cost Claiborne months, if not years, of additional time in prison because in my opinion, plain error exists on these facts.

The obstruction enhancement requires willful conduct on the part of the defendant to whom it is applied. U.S.S.G. § 3C1.1. This court has previously found such willful conduct where the defendant "actively participated" in the escape attempt. *See United States v. Cisneros*, 112 F.3d 1272, 1280 (5th Cir. 1997).[5] Given that Claiborne did not unbuckle his seatbelt, agree to help Weldon

---

[5] *See also United States v. Whorton*, 79 F. App'x 1, at *1 (5th Cir. 2003) (per curiam) (affirming the application of the obstruction enhancement where the defendant had scraped mortar from the bricks near his bed and then covered the scraped area with toothpaste because the defendant acted "voluntarily and intentionally" (internal quotation marks omitted)); *United States v. Barnum*, 15 F.3d 181 (5th Cir. 1994) (per curiam) (affirming the

escape, respond to his questions about escaping, or talk about escaping, there is no evidence that Claiborne plotted an escape or aided and abetted Weldon in doing so. *Cf. Cisneros*,  112 F.3d at 1279–80.  Therefore, it was clear error for the district court to have applied the obstruction enhancement to Claiborne.

This finding does not end the inquiry.  Because Claiborne failed to object to the obstruction enhancement's application at the district court, he must show a "reasonable probability that, but for the district court's misapplication of the Guidelines, [Claiborne] would have received a lesser sentence." *Villegas*, 404 F.3d at 364.  Absent the misapplication of the obstruction enhancement, Claiborne's total offense level would have been 25 and his Guidelines range would have been 57 to 71 months.  *See* U.S.S.G. ch. 5, pt. A.  Although the correct and incorrect Guidelines ranges overlap, Claiborne's sentence was not in the overlapping range.  His 78-month term of imprisonment was seven months greater than the maximum recommended sentence by the correct Guidelines range.

The facts of this case lead me to conclude that there is a "reasonable probability" that Claiborne would have received a lesser sentence absent the district court's misapplication of the obstruction enhancement.  The district court neither indicated that it would have imposed the same sentence as an alternative sentence nor expressed an intent to go outside the Guidelines range. *Cf. United States v. Bonilla*, 524 F.3d 647, 656 (5th Cir. 2008) (stating that when the district court imposes a non-Guidelines sentence that does not directly result from an error in calculating the Guidelines, a sentence may be affirmed).  In fact,

---

application of the obstruction enhancement where shoes were delivered to the defendant while he was in custody that contained hacksaw blades hidden in the soles because although the defendant claimed no knowledge of the shoes, the evidence supported the logical and reasonable inference that the defendant participated in a scheme to have the shoes containing the blades delivered to him).

the district court specifically denied the Government's request for an above-Guidelines sentence, stating that it was not departing from the Guidelines because the range was "fair and reasonable." Therefore, I would find the third prong of plain error—effect on defendant's substantial rights— met. *See United States v. Carrizales-Jaramillo*, 303 F. App'x 215, 217 (5th Cir. 2008) (per curiam) (finding reversible plain error where the incorrect Guidelines range (30–37 months) and correct Guidelines range (24–30 months) overlapped by one month but the defendant's sentence (31 months) was not within the correct Guidelines range, and the district court did not indicate that it would have imposed the same sentence or express an intent to sentence above the Guidelines range). Finally, the sentencing error "seriously affected the fairness, integrity, or public reputation of judicial proceedings" because it "clearly affected the [defendant's] sentence." *United States v. Gonzales*, 484 F.3d 712, 716 (5th Cir. 2007) (alteration and internal quotation marks omitted).

Although the court applies the correct rule under our earliest-case-controls rule, the rule applied is a bad one and one that for Claiborne, results in a miscarriage of justice.